24-1568-cv
*The City of New York v. Exxon Mobil Corp.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term 2024

(Argued:  March 4, 2025          Decided: October 3, 2025)

Docket No. 24-1568-cv

_____

THE CITY OF NEW YORK,

*Plaintiff-Appellee,*

v.

EXXON MOBIL CORPORATION; EXXONMOBIL OIL CORPORATION;
ROYAL DUTCH SHELL PLC; SHELL OIL COMPANY; BP P.L.C.;
BP AMERICA INC.; AMERICAN PETROLEUM INSTITUTE,

*Defendants-Appellants.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

Before:  JACOBS, CHIN, AND MERRIAM, *Circuit Judges.*

_____

Appeal from an opinion and order of the United States District Court for the Southern District of New York (Caproni, *J.*), granting in part the City of New York's motion for attorneys' fees and costs. The City filed suit against defendant-appellant oil companies in New York state court alleging deceptive advertising practices under New York state law. The oil companies removed the case to federal court, and the City moved to remand the case to state court. The proceedings were stayed pending a decision in a similar case in this Court. After this Court ruled in the other case, addressing issues similar to those raised here, the district court lifted the stay and denied the motion to remand without prejudice to allow the parties to re-brief the issues with the benefit of this Court's decision. The City refiled the motion to remand and also requested attorneys' fees and costs pursuant to 28 U.S.C. § 1447(c). The oil companies opposed both the motion to remand and the request for fees and costs. The district court granted the motion to remand and awarded the City attorneys' fees and costs to cover a portion of the proceedings. The oil companies appeal the award of attorneys' fees and costs.

AFFIRMED.

JUDGE JACOBS DISSENTS IN A SEPARATE OPINION.

- 2 -

———————————————————

KANNON K. SHANMUGAM (Kyle Smith,
    William T. Marks, Jake L. Kramer, *on the
    brief*), Paul, Weiss, Rifkind, Wharton &
    Garrison LLP, Washington, DC, and

    Theodore V. Wells, Jr., Daniel J. Toal, David
    K. Kessler, *on the brief*, Paul, Weiss, Rifkind,
    Wharton & Garrison LLP, New York, NY,
    *for Defendants-Appellants.*

HILARY MELTZER (Alice R. Baker, Nathan
    Taylor, Tess Dernbach, *on the brief*), for
    Muriel Goode-Trufant, Corporation
    Counsel of the City of New York, New
    York, NY, and

    Victor M. Sher, Matthew K. Edling,
    Quentin C. Karpilow, Anna D. Applebaum,
    *on the brief*, Sher Edling LLP, San Francisco,
    CA, *for Plaintiff-Appellee.*

———————————————————

CHIN, *Circuit Judge*:

        Plaintiff-appellee City of New York (the "City") sued defendants-

appellants Exxon Mobil Corporation, ExxonMobil Oil Corporation, Royal Dutch

Shell PLC, Shell Oil Company, BP P.L.C., BP America Inc. and the American

Petroleum Institute (collectively, "Exxon") in New York state court for deceptive

advertising practices under New York state law. Exxon removed the case to the

- 3 -

United States District Court for the Southern District of New York and the City

moved to remand.  The district court (Caproni, *J*.) stayed the motion to remand

to await decision in a similar case pending in this Court in which Exxon was

appealing a decision of the District of Connecticut remanding the case to the

Connecticut state court.  *See Connecticut v. Exxon Mobil Corp.*, 83 F.4th 122 (2d Cir.

2023) ("*Connecticut*").

      After we affirmed the district court's order remanding the similar

case, *Connecticut*, 83 F.4th at 147, the district court in the instant case lifted the

stay, denied the motion to remand without prejudice, and invited the parties to

re-brief the case with the benefit of our decision in *Connecticut*.  The City refiled

its motion to remand and also sought attorneys' fees and costs under 28 U.S.C.

§ 1447(c).  Exxon continued to oppose remand, asserting many of the same

arguments it had raised in its initial opposition papers (as well as in many other

cases filed around the country).

      The district court granted the motion for remand and granted in

part and denied in part the motion for attorneys' fees and costs.  *See City of New

York v. Exxon Mobil Corp.*, 733 F. Supp. 3d 296, 316 (S.D.N.Y. 2024).  It awarded

fees only with respect to five of the six grounds that Exxon had asserted as a

basis for removal and only for Exxon's renewed efforts to oppose remand. *Id*. at

316. The district court concluded that Exxon had not acted reasonably in

continuing to press arguments that had already been rejected by "the

overwhelming majority of federal district and circuit courts around the country,"

including in the *Connecticut* decision. *Id*. at 315-16.

Exxon appeals the award of fees and costs. Because we conclude

that the district court did not abuse its discretion in awarding fees and costs in

the circumstances here, we affirm.

## BACKGROUND

### A.    *The Removal Statute*

As a general matter, a civil case filed in state court may be removed

by the defendant to federal district court if the case could have been brought

there originally. *See Martin v. Franklin Capital Corp.*, 546 U.S. 132, 134 (2005); 28

U.S.C. § 1441(a). After a party removes a case to federal court, the opposing

party may seek to remand the case back to state court. *See generally* 28 U.S.C.

§ 1447. A motion to remand based on lack of subject matter jurisdiction may be

made "at any time before final judgment." 28 U.S.C. § 1447(c). As we recognized

in *Connecticut*, "the 'defendant always has the burden of establishing that

- 5 -

removal is proper.'" 83 F.4th at 132 (quoting *United Food & Com. Workers Union, Local 919, AFL-CIO v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994)). The removal statute must be construed narrowly, resolving any doubts against removability. *See Connecticut*, 83 F.4th at 132 (citing *Platinum-Montaur Life Scis., LLC v. Navidea Biopharmaceuticals, Inc.*, 943 F.3d 613, 617 (2d Cir. 2019)). Indeed, "[o]ut of respect for state courts, [the Supreme] Court has time and again declined to construe federal jurisdictional statutes more expansively than their language, most fairly read, requires." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 578 U.S. 374, 389 (2016) (affirming judgment remanding case to state court).

Under the "well-pleaded complaint rule," federal question jurisdiction "generally 'exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint,'" and it cannot be triggered based on "a federal defense." *Connecticut*, 83 F.4th at 132 (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 393 (1987)) (internal quotation marks omitted); *accord Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003) ("As a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim.").

- 6 -

There are three exceptions to the well-pleaded complaint rule, which are to be "tightly circumscribed." *Connecticut*, 83 F.3d at 133. These are:

> first, if Congress expressly provides, by statute, for removal of state law claims . . . ; second, if the state law claims are completely preempted by federal law . . . ; and third, in certain cases if the vindication of a state law right necessarily turns on a question of federal law . . . .

*Fracassse v. People's United Bank*, 747 F.3d 141, 144 (2d Cir. 2014) (citations omitted); *accord Connecticut*, 83 F.3d at 133.

The statute also provides for the award of attorneys' fees: "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). We discuss § 1447(c) in more detail below.

**B.**      ***State Court Actions against Exxon***

  **1.**      ***Jurisdictions other than Connecticut and New York***

Starting in approximately 2017, numerous state and local entities sued Exxon (and, in some instances, other oil companies as well) in different state courts under state and local deceptive advertising, nuisance, and other consumer protection laws. In response, Exxon repeatedly removed the cases to federal court. The state and local entities moved to remand, and Exxon opposed,

consistently raising the same or similar grounds for removal as proffered in this case. In virtually all of those cases, Exxon failed in its efforts to oppose remand, as its jurisdictional arguments were roundly rejected, both before it renewed its opposition to remand in this case (November 11, 2023)[1] and thereafter, as courts continued to reject its jurisdictional arguments in later cases.[2] Indeed, Exxon has

---

[1]      In the following decisions, circuit courts affirmed district court orders remanding a case to state court where the oil companies, including Exxon, argued that removal was appropriate based on, *inter alia,* the preemption doctrine and federal question (including the Outer Continental Shelf Lands Act (the "OCSLA"), 43 U.S.C. § 1349(b)(1)), federal enclave, federal officer, bankruptcy, admiralty, and Class Action Fairness Act ("CAFA") jurisdiction. *See Minnesota v. Am. Petroleum Inst.,* 63 F.4th 703 (8th Cir. 2023); *Plaquemines Parish v. Chevron USA, Inc.,* No. 22-30055, 2022 WL 9914869 (5th Cir. Oct. 17, 2022) (mem.); *City of Hoboken v. Chevron,* 45 F.4th 699, 706 (3d Cir. 2022); *City & Cnty. of Honolulu v. Sunoco* LP, 39 F.4th 1101, 1111-12 (9th Cir. 2022); *Rhode Island v. Chevron Corp.,* 35 F.4th 44 (1st Cir. 2022); *Cnty. of San Mateo v. Chevron Corp.,* 32 F.4th 733, 749-51 (9th Cir. 2022); *Mayor & City Council of Baltimore v. BP P.L.C.,* 31 F.4th 178, 217-19 (4th Cir. 2022); *Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.,* 25 F.4th 1238, 1275 (10th Cir. 2022). In *Platkin v. Exxon Mobil Corp.,* No. 22-CV-06733, 2023 WL 4086353, at *3 n.2 (D.N.J. June 20, 2023), the district court granted a motion to remand to state court, and the case does not appear to have been appealed. And in *District of Columbia v. Exxon Mobil Corp.,* 640 F. Supp. 3d 95, 106-07 (D.D.C. 2022), the district court granted remand before Exxon renewed its opposition to remand in this case, and the D.C. Circuit affirmed after it did so, 89 F.4th 144 (D.C. Cir. 2023).

[2]      *See District of Columbia v. Exxon Mobil Corp.,* 89 F.4th 144 (D.C. Cir. 2023) (affirming district court's order remanding case to District of Columbia Superior Court); *City of Oakland v. BP P.L.C.,* No. 22-16810, 2023 WL 8179286 (9th Cir. Nov. 27, 2023) (affirming district court's order remanding case); *Anne Arundel Cnty., Maryland v. BP*

succeeded in keeping only *one* case in federal court, and even there the district

court denied the motion to remand "reluctantly." *Pac. Coast Fed'n of Fishermen's*

*Ass'ns v. Chevron Corp.*, No. 18-cv-07477, 2023 WL 7299195, at *1 (N.D. Cal. Nov.

1, 2023). There, the district court held that the case was properly removed "under

the Class Action Fairness Act, which permits removal of lawsuits brought under

state-law rules similar to Rule 23." *Id*. at *1. The Pacific Coast Federation of

Fishermen's Associations filed suit on behalf of itself and its members, as a

representative action authorized under section 382 of the California Code of Civil

Procedure, a California rule similar to Rule 23. *See id.* The district court noted

that all of the other grounds for removal offered by the defendants -- federal

common law, complete preemption, admiralty jurisdiction, federal enclave

_____

*P.L.C.*, 94 F.4th 343 (4th Cir. 2024) (affirming district court's order remanding case to state court); *City of Charleston v. Brabham Oil Co., Inc.*, No. 2:20-cv-03579, 2023 WL 11867279 (D.S.C. July 5, 2023) (granting motion to remand case to state court); *Vermont v. Exxon Mobil Corp.*, No. 2:21-cv-00260, 2024 WL 446086 (D. Vt. Feb. 6, 2024) (granting motion to remand case to state court); *County of Multnomah v. Exxon Mobil Corp.*, No. 3:23-cv-01213, 2024 WL 1991554 (D. Ore. Apr. 10, 2024) (granting motion to remand case to state court); *City of Chicago v. BP P.L.C.*, No. 24-cv-02496, 2025 WL 1426163 (N.D. Ill. May 16, 2025) (granting motion to remand case to state court); *Makah Indian Tribe v. Exxon Mobil Corp.*, No. 2:24-cv-00157, No. 2:24-cv-00158, 2025 WL 913767 (W.D. Wash. Mar. 26, 2025) (granting motion to remand case to state court).

- 9 -

jurisdiction, bankruptcy jurisdiction, OCSLA, First Amendment, and the federal officer removal statute -- lacked merit. *See id.* at *3.

In short, with the exception of the one Northern District of California case in which only one out of nine asserted bases for removal was accepted, Exxon has repeatedly failed in its efforts to remove these cases from state and local courts.

### 2.    *The* Connecticut *Decision*

Before filing its removal motion in this case, Exxon had already removed a similar case filed under Connecticut state law in Connecticut state court to the federal district court in Connecticut. *See Connecticut v. Exxon Mobil Corp.,* No. 3:20-cv-01555, 2021 WL 2389739, at *2 (D. Conn. June 2, 2021). In that case, Connecticut sued Exxon under the Connecticut Unfair Trade Practices Act alleging that Exxon knowingly misled and deceived Connecticut consumers about the negative climatological effects of fossil fuels that the company was marketing to consumers. *See Connecticut*, 83 F.4th at 129.

After Exxon removed the case, Connecticut moved to remand. The district court granted the motion and Exxon appealed to this Court. In its appeal, Exxon offered several grounds for removal, including three that were asserted in

- 10 -

the instant case: (1) the federal question statute, 28 U.S.C. § 1331; (2) the federal

officer removal statute, 28 U.S.C. § 1442(a)(1); and (3) the OCSLA, 43 U.S.C.

§ 1349(b)(1).  *See* 83 F.4th at 129.

On September 27, 2023, this Court issued its opinion in *Connecticut*,

affirming the district court's granting of the motion for remand.  We explained

that removal to federal court is generally limited to cases where the complaint

could have been filed in federal court initially, including cases that "arise[] under

the laws of the United States" as provided by the federal question statute, 28

U.S.C. § 1331.  *Id.* at 132.  We noted that under the well-pleaded complaint rule,

federal question jurisdiction generally exists "only when a federal question is

presented on the face of the plaintiff's properly pleaded complaint."  *Id.* (citations

omitted).   We reiterated that federal jurisdiction cannot be based on a federal

defense "even if the defense is anticipated in the plaintiff's complaint, and even if

both parties concede that the federal defense is the only question truly at issue."

*Id.* (citations omitted).  We rejected Exxon's arguments that any of the three

exceptions to the well-pleaded complaint rule applied, *see id.* at 133, and we

found no basis for removal, as follows:

1.      We rejected Exxon's argument that removal was warranted because the state law claims were preempted by federal law. We noted that Connecticut's claims involved only *ordinary* preemption, not *total* preemption as required to meet the exception. *See id.* at 135-36 ("Exxon Mobil's argument for a 'federal-common-law exception' would appear to hinge on the proposition that the well-pleaded complaint rule must yield not only in situations of 'complete[] preempt[ion]' . . . but also in certain situations of *ordinary* preemption. That proposition, however, is contrary to 'settled law' dating back 'since 1887.'" (citations and footnote omitted) (emphasis in original)).

2.      We rejected Exxon's argument that removal was appropriate based on the third exception to the well-pleaded complaint rule because the vindication of the state law rights turned on a question of federal law. *See id.* at 139-40 (referring to the exception recognized in *Grable & Sons Metal Prod. Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 305, 312 (2005)). Exxon argued that federal common law was at stake here because Connecticut's claims "implicate[d] the federal common law of transboundary pollution." *Connecticut*, 83 F.4th at 140 (citation omitted). We rejected that argument because the law of transcontinental pollution was not a necessary element of the deceptive advertising practices

- 12 -

claim at issue here. *Id.* at 140 ("[T]he 'mere *presence* of a federal issue in a state cause of action' is insufficient; the pertinent 'question of federal law' must be 'a *necessary element* of one of the well-pleaded state claims.'" (emphases in original) (citations omitted)).

3.    We rejected Exxon's argument that there was federal jurisdiction based on the federal officer removal statute, 28 U.S.C. § 1442(a)(1). *Id.* at 142-145.  Exxon alleged that although it was not an *actual* "federal officer," it qualified as a "federal officer" because it leased drilling sites from the federal government, operated such sites, and paid royalites to the federal government. *Id.* at 143.  We disagreed.  *Id.* (observing that this argument had been made to "five of our sister circuits, all of which have squarely rejected it").

4.    We rejected Exxon's argument that there was federal jurisdiction because Exxon "contributed significantly to the United States military by providing fossil fuels that support the national defense." *Id.* at 144 (citation omitted).  In doing so, we noted that "when Exxon Mobil recently made similar arguments . . . the Fifth Circuit flatly rejected them." *Id.*

5.    We rejected Exxon's argument that there was jurisdiction under the OCSLA, which provides federal jurisdiction over actions arising out of

operations conducted on the outer continental shelf.  *Id*. at 145-46.  We observed

that "[t]his argument brings us back to ground well-trodden by our sister

circuits.  Exxon Mobil has made virtually the same argument to five other courts

of appeals, all of which have rejected it."  *Id*. at 146.

    **3.**    *New York -- The Instant Case*

        As noted above, the City sued Exxon in New York state court in

April 2021 for violations of New York City's Consumer Protection Law ("CPL").

Specifically, the City alleged that Exxon violated the CPL by misleading

consumers in New York City about the role of Exxon's products in contributing

to climate change.

        On May 28, 2021, Exxon removed the case to the district court below

asserting seven grounds for federal jurisdiction:

        1.    federal question jurisdiction, based on federal
                common law governing transboundary pollution and
                foreign affairs;

        2.    the federal officer removal statute, 28 U.S.C. § 1442;

        3.    the OCSLA;

        4.    federal enclave jurisdiction (contending that Exxon's
                production and sale of fossil fuels occurred in
                "federal enclaves");

- 14 -

     5.      diversity jurisdiction;

     6.      CAFA; and

     7.      federal constitutional issues, specifically, the First Amendment.

*See generally* 733 F. Supp. 3d at 304 (reviewing Exxon's grounds for removal and noting that Exxon had "abandoned" its argument that the court had jurisdiction pursuant to the OCSLA). *Id.* at 304 n.2.

On June 25, 2021, the City moved to remand. Exxon opposed. On November 12, 2021, the district court stayed the case pending a decision by this Court in *Connecticut*.

On September 27, 2023, we issued our opinion in *Connecticut*, affirming the district court's order remanding the case to the Connecticut state court. *See* 83 F.4th at 147.

In light of that decision, on October 2, 2023, the City asked the district court to lift the stay in this case and decide its motion to remand. **[JA 7].** On October 4, 2023, the district court lifted the stay but denied the motion to remand, without prejudice, to allow the parties to re-brief the issues with the benefit of our decision in *Connecticut*.

- 15 -

The next day, October 5, 2023, counsel for the City wrote an email to counsel for Exxon, asking Exxon to consider withdrawing the grounds for removal addressed in *Connecticut*, so that the parties could "avoid spending time re-briefing issues that are controlled by the Second Circuit's recent decision." Joint App'x at 213. Exxon's counsel agreed only that "*Connecticut* controls the third ground for removal (OCSLA)," and contended that otherwise *Connecticut* was not controlling. Joint App'x at 211. *See Connecticut*, 83 F.4th at 145-47 (rejecting OCSLA as basis for federal jurisdiction).

On October 20, 2023, the City refiled its motion to remand and also sought attorneys' fees and costs under § 1447(c). On November 11, 2023, Exxon opposed the motion. Exxon dropped the OCSLA argument, but pressed two arguments that we had specifically rejected in *Connecticut*: federal question jurisdiction based on federal common law governing transboundary pollution and foreign affairs, *see* 733 F. Supp. 3d at 305-08, and the federal officer removal statute, *see id*. at 308; *see also Connecticut*, 83 F.4th at 132-42, 142-45 (addressing federal question jurisdiction and the federal officer removal statute). Exxon also reiterated four arguments that it had raised in its initial opposition to remand in this case, which had not been addressed (at least not explicitly) in *Connecticut*: (1)

- 16 -

federal enclave jurisdiction; (2) diversity jurisdiction; (3) class action jurisdiction; and (4) federal constitutional claims, *i.e.*, the First Amendment.[3]  Hence, the parties briefed six grounds asserted by Exxon as a basis for federal subject matter jurisdiction.

On May 8, 2024, the district court issued an opinion granting the City's motion to remand and granting in part the City's request for attorneys' fees and costs.  733 F. Supp. 3d at 303, 316.

First, the district court reviewed -- and rejected -- the six grounds asserted by Exxon for federal jurisdiction:

1.    The district court rejected Exxon's argument that federal common law governing transboundary pollution and foreign affairs dominated the field such that any claims involving those areas necessarily arose under federal law, noting that Exxon had "made the same argument in many if not all

---

[3]    We did not explicitly address the First Amendment issue in *Connecticut* because there, as the district court noted, Exxon abandoned the argument on appeal.  *See* 733 F. Supp. 3d at 316 n.17.  In *Connecticut*, however, we reiterated that federal question jurisdiction cannot be based on a federal defense.  *See* 83 F.4th at 132.  Based on this reasoning the district court concluded that Exxon's reliance on a First Amendment defense was "not objectively reasonable following *Connecticut*."  733 F. Supp. 3d. at 316 n.17.

of the similar consumer protection cases filed by other state and local

governments" and "[n]one has succeeded."  733 F. Supp. 3d at 306 & n.4 (citing

numerous decisions).  The district court observed that the City's claims were

"about false and misleading advertisements," not about "emissions."  *Id.* at 306.

      2.    The district court rejected Exxon's reliance on the federal

officer removal statute, noting that it had been rejected in *Connecticut*.  *Id*. at 308.

      3.    The district court rejected Exxon's reliance on federal enclave

jurisdiction, calling it "the silliest of all of its arguments."  *Id*.  The district court

noted that "[Exxon's] theory of federal enclave jurisdiction has been rejected by

every court to consider it in similar consumer protection cases that touch on

deception about climate change.  The Court finds no reason to part company

with those courts."  *Id*. at 309 (footnote omitted citing numerous decisions).  The

district court noted in particular that Exxon's assertion that federal enclave

jurisdiction existed because its advertisements reached federal enclaves was

"absurd," because "all advertisements on the internet, television, radio and in

newspapers can be viewed or heard by persons who happen to be in a federal

enclave."  *Id*.

4.    The district court rejected Exxon's argument that diversity jurisdiction existed because the one non-diverse defendant had been fraudulently joined, concluding that the complaint asserted a "colorable claim" against that party.  *Id*. at 310-11.

5.    The district court rejected Exxon's reliance on class action jurisdiction, characterizing it as "[s]econd in absurdity" to the federal enclave argument.  *Id*. at 312.  The district court noted that the complaint had not been filed under Rule 23 or a New York statutory equivalent and that New York law provided "a cause of action only for the City, which means a claim under [the New York City Code] bears absolutely no similarity to a class action."  *Id*. at 312-13.

6.    Finally, the district court rejected Exxon's reliance on the First Amendment as a basis for jurisdiction.  The district court concluded that, to the extent Exxon was arguing that its advertisements were protected by the First Amendment, "[t]he fact that [Exxon] may have a defense, even a defense rooted in the First Amendment, is not adequate to establish the [third] exception" to the well-pleaded complaint rule.  *Id*. at 314.  The district court noted that in *Connecticut* we had reiterated that the "mere *presence* of a federal issue in a state

- 19 -

cause of action is insufficient" to establish federal jurisdiction. 83 F.4th at 140; *see* 733 F. Supp. 3d at 314.

Second, the district court granted -- in part -- the City's request for attorneys' fees and costs. It awarded fees and costs "in connection with arguments that it was not reasonable for [Exxon] to press when the City renewed its motion for remand: arguments that had largely been decided by the Circuit in *Connecticut* -- federal common law, federal officer removal, and First Amendment defenses, and those that were objectively absurd -- federal enclaves and CAFA." 733 F. Supp. 3d at 316 (footnote omitted). In determining that these arguments were not reasonable, the court noted that the arguments at issue had been either abandoned or rejected in *Connecticut*, or had been universally rejected in every court in the country where they had been raised. *Id.* at 316. The court further noted that "[a]lthough [Exxon's] diversity jurisdiction argument was not a winner, the Court cannot say that it was unreasonable for [Exxon] to press that argument." *Id*. Hence, the district court awarded fees only for five of the six bases asserted by Exxon for removal and only for work performed and costs incurred on those five bases after our ruling in *Connecticut*.

- 20 -

On June 7, 2024, Exxon appealed the fee award. To avoid further litigation over the amount of fees and costs, the City and Exxon stipulated that in the event the fee award was affirmed on appeal, Exxon would pay the City $68,262.46. The district court "so ordered" the stipulation on July 10, 2024.

## DISCUSSION

We review a decision to award attorneys' fees and costs under 28 U.S.C. § 1447(c) for abuse of discretion. *See Calabro v. Aniqua Live Poultry Corp.*, 650 F.3d 163, 166 (2d Cir. 2011). "A district court has abused its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or rendered a decision that cannot be located within the range of permissible decisions." *Id*. (citation omitted).

## A.    *Applicable Law*

Section 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). In *Martin v. Franklin Capital Corp.*, 546 U.S. 132 (2005), the Supreme Court provided guidance as to the award of fees and costs:

- 21 -

> Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.  Conversely, when an objectively reasonable basis exists, fees should be denied.  In applying this rule, *district courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case*.

546 U.S. at 141 (emphasis added; citations modified).  Thus, as the Court made clear, a district court retains discretion to award fees in "unusual circumstances," even where an objectively reasonable basis for removal existed.

In exercising its discretion in awarding fees, the district court's "reasons for departing from the general rule should be 'faithful to the purposes' of awarding fees under § 1447(c)."  *Id.* (citations omitted).  The Court further explained:

> Congress thought fee shifting appropriate in some cases.  The process of removing a case to federal court and then having it remanded back to state court delays resolution of the case, imposes additional costs on both parties, and wastes judicial resources.  Assessing costs and fees on remand reduces the attractiveness of removal as a method for delaying litigation and imposing costs on the plaintiff.  The appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when statutory criteria are satisfied.

*Id*. at 140.

**B.    *Application***

On appeal, Exxon does not challenge the district court's order to remand the case; it challenges only the district court's award of fees and costs.  It argues that the district court abused its discretion in awarding fees and costs because the district court made two legal errors:  first, it awarded fees and costs despite finding *one* of Exxon's six grounds for removal to be objectively reasonable; and, second, the district court assessed the reasonableness of the grounds for removal based on the law and circumstances at the time of its renewed motion to remand rather than at the time the case was initially removed.  We address both arguments in turn, and then consider the reasonableness of the district court's award of fees and costs.

**1.    *Grounds for Removal***

As noted above, in *Martin* the Supreme Court held that "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal" and "[c]onversely, when an objectively reasonable basis exists, fees should be denied."  546 U.S. at 141.  Exxon argues that because the district court

- 23 -

found that the diversity jurisdiction argument was not "unreasonable," 733 F.

Supp. 3d at 316 ("the Court cannot say that it was unreasonable for [Exxon] to

press [the diversity] argument"), it was error for the district court to award fees

because there was a reasonable ground for removal.

We are not persuaded; Exxon's argument ignores the words

"[a]bsent unusual circumstances." *Martin*, 546 U.S. at 141.  The Court made clear

in *Martin* that, in "unusual circumstances," fees could be assessed under § 1447(c)

*even if* there was a reasonable basis for removal.[4]  *Id.* The question thus becomes

whether this case presented "unusual circumstances" and, if so, whether the

district court abused its discretion in awarding fees in those circumstances.

This case, in our view, clearly presented unusual circumstances.

Exxon's renewed opposition to remand in this case was not made in a vacuum,

but after efforts to remove similar state cases to federal court had been rejected

---

[4]      While arguing that the unusual circumstances exception does not apply in this
case, Exxon acknowledges in its brief on appeal that "'district courts retain discretion to
consider whether unusual circumstances warrant a departure from the [general] rule in
a given case,' *Martin*, 546 U.S. at 141."  Appellants' Br. at 20.

- 24 -

all around the country.  On November 11, 2023, when Exxon renewed its

opposition to the City's motion to remand below, its arguments opposing

remand had been rejected by eight circuits -- the First, Third, Fourth, Fifth,

Eighth, Ninth, and Tenth as well as by this Court in *Connecticut* -- and by at least

eleven district courts (including the district court in *Connecticut*).[5]  As the district

court here put it:

> Although Defendants may have removed this case in good faith in
> 2021, their opposition to the City's Renewed Motion to Remand,
> which was briefed in October 2023, made multiple arguments that
> had previously been made to and universally rejected by federal
> courts across the country.  Defendants conceded that *Connecticut*
> controlled one of its grounds for removal, . . . but conceded nothing
> else, despite the string of cases in district and circuit courts that have
> rejected the very arguments they were pursuing.  Whatever may
> have been the state of play in 2021, this can no longer be considered
> a good faith litigation strategy.

733 F. Supp. 3d at 315.

Exxon contends that here the district court did not invoke the

unusual circumstances exception, and it is true that the district court did not use

those words in its decision.  *See id*. at 314-16.  As a general matter, however, we

_____

[5]    *See* footnote 1 *supra*.  In the circuit cases cited in footnote 1, the circuit courts were
affirming district court decisions granting motions to remand.

- 25 -

can affirm on any ground supported by the record. *See Mallet v. New York State Dep't of Corr.*, 126 F.4th 125, 137 n.9 (2d Cir. 2025) ("[W]e 'may affirm on any basis for which there is sufficient support in the record, including grounds not relied on by the district court.'") (citations omitted). The record here supports the conclusion that this case presented unusual circumstances. Indeed, even defense counsel acknowledged during oral argument that this was an "unusual" case.

Moreover, the record makes clear that the district court believed this case presented "unusual circumstances," even if it did not use those precise words. The language of the decision -- including the language quoted above -- bears this out. The district court also characterized some of defendants' arguments as: "the silliest of all its arguments" (*id*. at 308); "ridiculous" (*id*. at 308); "[s]econd in absurdity" (*id*. at 312); and "objectively absurd" (*id*. at 316).

Accordingly, we hold that this case presented unusual circumstances such that the district court had the discretion to award fees and costs pursuant to § 1447(c) even though, as the district court found, Exxon had one objectively reasonable – though meritless – basis for removing the case in 2021 and for renewing its opposition to remand in November 2023.

- 26 -

2.    *Timing*

Exxon argues that the district court erred in evaluating the validity of its jurisdictional arguments based on the law when it renewed its opposition to remand in November 2023 (after our decision in *Connecticut*), rather than when it initially removed the case 2021.  Exxon contends that because all of the removal arguments were "reasonable" at the time of the initial removal, the district court erred in awarding fees based on the state of the law in 2023.  We disagree.

First, we consider the unusual timeline of the proceedings in the case -- the case was stayed for two years after it was removed pending our decision in *Connecticut*.  During that time, many of the precise arguments asserted in this case -- by the same oil companies represented by the same lawyers -- had been raised and were rejected in many similar cases in other parts of the country.  After we ruled in *Connecticut*, the parties had the benefit not only of our decision but of decisions of seven other circuits and many other district courts.  Hence, the state of the law had indeed changed from 2021 to 2023, and Exxon's jurisdictional arguments had been, as the district court put it, "roundly rejected."  733 F. Supp. 3d at 315.

- 27 -

Second, the case was stayed in the district court precisely to give the parties the benefit of this Court's decision in *Connecticut*. Exxon had the ability in 2023 to evaluate this Court's ruling in *Connecticut* -- as well as all the other decisions from around the country -- to decide whether to persist in its opposition to remand. At that point, it was largely irrelevant whether Exxon had reasonable grounds for removing the case in 2021; the question was whether, given the undeniable change in the legal landscape, Exxon had reasonable grounds for prolonging litigation by continuing to oppose remand.

Third, neither § 1447(c) nor *Martin* places limits on the timing of a district court's fees analysis. Rather, the Court in *Martin* made clear that a district court has discretion to award fees and costs "when such an award is just." 546 U.S. at 138. The only limitation on the exercise of a court's discretion, the Court explained, is that the court's "reasons for departing from the general rule should be 'faithful to the purposes' of awarding fees under § 1447(c)." *Id*. at 141 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)). A rule limiting the temporal scope of the court's analysis would unduly restrict its discretion to award fees "when such an award is just." That outcome cannot be what the Supreme Court intended when it held in *Martin* that "district courts retain discretion to consider

- 28 -

whether unusual circumstances warrant a departure from the [general] rule in a given case." 546 U.S. at 141. Such a result would undermine § 1447(c)'s purpose to discourage removals designed to delay litigation and inflict costs. *Id.* at 140.[6]

Consequently, we conclude that the district court did not err in evaluating the soundness of Exxon's jurisdictional arguments in 2023, when Exxon renewed its jurisdictional arguments for removal, rather than when the case was first removed in 2021.

**3.** ***The Reasonableness of the Award***

Finally, we consider the reasonableness of the district court's award of fees and costs in light of the considerations discussed above.

---

[6]     Exxon argues that the Supreme Court's citation in *Martin* to *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 293 (5th Cir. 2000), *see* 546 U.S. at 141, supports its argument that the district court was strictly limited to considering the legal landscape at time of the initial removal in 2021. **[Blue at 21].** In *Valdes*, the Fifth Circuit stated: "We evaluate the objective merits of removal at the time of removal, irrespective of the fact that it might ultimately be determined that removal was improper." 199 F.3d at 294. Exxon reads too much into the Supreme Court's citation to *Valdes*. *Martin* does not include the quoted language or otherwise refer to it. Rather, *Martin* does not discuss timing at all and cites *Valdes* only for the general rule as to when fees should be granted or denied. *See* 546 U.S. at 141. Furthermore, *Valdes* does not address the situation where, as here, a party continues to press legal arguments that many courts have already rejected.

- 29 -

While it might have been problematic if the district court had awarded the City fees and costs from the point of removal in 2021, it awarded fees and costs only "in connection with arguments that it was not reasonable for Defendants to press when the City renewed its motion to remand." *Id.* at 316. The district court exercised its discretion to award fees and costs in a measured way -- that is, only with respect to fees associated with the objectively unreasonable grounds for removal and only for work required after the legal landscape had shifted significantly. The district court's approach was certainly "faithful to the purposes" of fee awards under § 1447(c), as it balanced the right of Exxon to remove the case to federal court against the costs of delay and prolonged litigation. *See Martin*, 546 U.S. at 140-41.

The district court did not find that Exxon had acted in bad faith in renewing its opposition to remand, nor do we reach that conclusion.[7] The law does not require that a removal be made in bad faith to warrant an award of fees under § 1447(c). *See Morgan Guar. Trust Co. of New York v. Republic of Palau*, 971

---

[7] *Cf.* 733 F. Supp. 3d at 315 ("Whatever may have been the state of play in 2021, this can no longer be considered a good faith litigation strategy.").

F.2d 917, 923 (2d Cir. 1992) ("[T]he statute as amended makes no reference at all to the state of mind or intent of the party removing the action, instead focusing strictly on the mere absence of subject matter jurisdiction.").[8]  Nonetheless, although Exxon may have had one objectively reasonable ground for renewing its opposition to remand, it continued to press many other arguments that had been "roundly rejected" either by this Court in *Connecticut* or by many other courts around the country -- eight circuit courts and at least eleven district courts.  While perhaps not asserted in bad faith, many of the arguments were plainly meritless, and some, as the district court concluded here, "objectively absurd."  Yet, the parties were required to litigate these claims, the district court was required to decide them, and the litigation was multiplied and delayed.

---

[8]     Nor does § 1447(c) require a finding of frivolousness for an award of fees and costs.  While the Supreme Court has noted that "a district court may order a defendant to pay the plaintiff's costs and expenses (including attorney's fees) if it frivolously removes a case from state court," *BP P.L.C. v. Mayor & City Council of Baltimore*, 141 S. Ct. 1532, 1542 (2021), the Court did not hold that frivolousness was *a requirement*.  As we held in *Morgan Guaranty*, "[t]he statute as a whole, particularly the reference that an order remanding the case *'may* require payment' of costs and fees, . . . affords a great deal of discretion and flexibility to the district courts in fashioning awards of costs and fees."  971 F.2d at 924; *see also Martin*, 546 U.S. at 140-41.

- 31 -

In these circumstances, we conclude that the district court did not abuse its discretion in awarding fees and costs to the extent that it did, that is, for work done after we issued our decision in *Connecticut* and only with respect to five of the six grounds asserted by Exxon.  Indeed, the final award is only $68,262.46 -- a nominal sum in the context of the overall, nation-wide litigation.[9]

## CONCLUSION

For the foregoing reasons, the order of the district court is AFFIRMED.

---

[9] In Part IV, the dissent writes that fees and costs should not have been assessed against Exxon because "the underlying complaint can be characterized as frivolous."  Dissent at 14.  Of course, the fact that an underlying claim may be frivolous does not justify questionable or oppressive conduct on the other side.  Even assuming the City's claims are meritless, two wrongs do not make a right.

- 32 -