# 24-1568-cv

## In the United States Court of Appeals
## for the Second Circuit

_____

THE CITY OF NEW YORK,
PLAINTIFF-APPELLEE

*v.*

EXXON MOBIL CORPORATION; EXXONMOBIL OIL CORPORATION;
ROYAL DUTCH SHELL PLC; SHELL OIL COMPANY; BP P.L.C.;
BP AMERICA INC.; AMERICAN PETROLEUM INSTITUTE,
DEFENDANTS-APPELLANTS

_____

*ON APPEAL FROM THE UNITED STATES DISTRICT COURT*
*FOR THE SOUTHERN DISTRICT OF NEW YORK (CIV. NO. 21-4807)*
*(THE HONORABLE VALERIE CAPRONI, J.)*
_____

**PETITION FOR REHEARING EN BANC BY APPELLANTS
EXXON MOBIL CORPORATION, EXXONMOBIL OIL CORPORATION, ROYAL
DUTCH SHELL PLC, SHELL OIL COMPANY, BP P.L.C., BP AMERICA INC.,
AND AMERICAN PETROLEUM INSTITUTE**

_____

THEODORE V. WELLS, JR.
DANIEL J. TOAL
DAVID K. KESSLER
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
*1285 Avenue of the Americas*
*New York, NY 10019*

KANNON K. SHANMUGAM
WILLIAM T. MARKS
BERNADETTE R. NELSON
JAKE L. KRAMER
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
*2001 K Street, N.W.*
*Washington, DC 20006*
*(202) 223-7300*
*kshanmugam@paulweiss.com*

_____

*(additional counsel on signature block)*

# CORPORATE DISCLOSURE STATEMENT

Appellant American Petroleum Institute has no parent corporation, and no publicly held company owns 10% or more of its stock.

Appellant BP p.l.c. has no parent corporation, and no publicly held company owns 10% or more of its stock.

Appellant BP America Inc. is a wholly owned indirect subsidiary of BP p.l.c.

Appellant Exxon Mobil Corporation has no parent corporation, and no publicly held company owns 10% or more of its stock.

Appellant ExxonMobil Oil Corporation is a wholly owned indirect subsidiary of Exxon Mobil Corporation.

Appellant Shell plc (f/k/a Royal Dutch Shell plc) is a public limited company incorporated under the laws of England and Wales. Shell plc does not have any parent corporations. As of October 16, 2025, Shell plc has not been notified by any publicly traded company that it owns 10 percent or more of Shell plc's issued share capital.

Appellant Shell USA, Inc. (f/k/a Shell Oil Company) is a wholly owned subsidiary of Shell Petroleum Inc., whose ultimate corporate parent is Shell plc. No other publicly held company owns 10 percent or more of the stock of Shell USA, Inc.

# TABLE OF CONTENTS

Page

Introduction.................................................................................1

Background ...............................................................................1

Reasons for granting rehearing en banc.................................8

    A.    The panel's decision conflicts with decisions of this Court
        and other courts ...............................................................9

    B.    The panel's decision is incorrect.....................................12

    C.    The panel's decision will have significant adverse effects
        and warrants review ........................................................16

Conclusion..................................................................................18

# TABLE OF AUTHORITIES

## CASES

*BP p.l.c.* v. *Mayor & City Council of Baltimore*, 593 U.S. 230 (2021) ........7, 14

*Calabro* v. *Aniqa Halal Live Poultry Corp.*,
    650 F.3d 163 (2d Cir. 2011) ...............................................13

*City of New York* v. *Chevron Corp.*, 993 F.3d 81 (2d Cir. 2021) ..................... 1, 2

*City of New York* v. *Exxon Mobil Corp.*,
    226 N.Y.S.3d 863 (Sup. Ct., N.Y. Cnty. 2025)..................................8

*Connecticut* v. *Exxon Mobil Corporation*,
    83 F.4th 122 (2d Cir. 2023)................................................3, 4, 5, 7

*Connecticut* v. *Exxon Mobil Corp.*, Civ. No. 20-1555,
    2021 WL 2389739 (D. Conn. June 2, 2021)........................................3

*Convent Corp.* v. *City of North Little Rock*, 784 F.3d 479 (8th Cir. 2015) ......11

*Knop* v. *Mackall*, 645 F.3d 381 (D.C. Cir. 2011)................................................13

*Legg* v. *Wyeth*, 428 F.3d 1317 (11th Cir. 2005) ........................................11

Page

Cases—continued:

*Lott* v. *Pfizer*, 492 F.3d 789 (7th Cir. 2007) ........................................................10

*Lussier* v. *Dollar Tree Stores, Inc.*, 518 F.3d 1062 (9th Cir. 2008) ..................11

*Martin* v. *Franklin Capital Corp.*:
    393 F.3d 1143 (10th Cir. 2004) ...................................................... 10, 11
    546 U.S. 132 (2005) ........................................................................ *passim*

*McKnight* v. *General Motors Corp.*, 511 U.S. 659 (1994)................................15

*Ohio ex rel. Skaggs* v. *Brunner*, 629 F.3d 527 (6th Cir. 2010) .........................11

*Tamm* v. *Cincinnati Insurance Co.*, 858 Fed. Appx. 412 (2d Cir. 2021) ........11

*Valdes* v. *Wal-Mart Stores, Inc.*, 199 F.3d 290 (5th Cir. 2000).............. 9, 10, 14

*Vera* v. *Saks & Co.*, 335 F.3d 109 (2d Cir. 2003) ..............................................11

*Virgin Islands Housing Authority* v. *Coastal General Construction Services Corp.*, 27 F.3d 911 (3d Cir. 1994) ......................................................11

*Williams* v. *International Gun-A-Rama*,
    416 Fed. Appx. 97 (2d Cir. 2011) ...............................................................8, 11

## STATUTES AND RULE

28 U.S.C. § 1332(d).............................................................................3, 4, 5

28 U.S.C. § 1442 ........................................................................................3

28 U.S.C. § 1447(c) ........................................................................... *passim*

28 U.S.C. § 1927 ......................................................................................15

43 U.S.C. § 1349(b)(1) ...........................................................................3, 4

Fed. R. App. P. 40(b)(2)(A) .......................................................................8

Fed. R. App. P. 40(b)(2)(C) .......................................................................8

Page

Rules—continued:

Fed. R. App. P. 40(b)(2)(D) .................................................................8

Fed. R. Civ. P. 11 .................................................................................15

## INTRODUCTION

The panel in this case held that, when a district court considers whether to assess fees and costs under 28 U.S.C. § 1447(c) against a defendant that unsuccessfully removed an action from state court to federal court, the court may award fees based exclusively on factual and legal developments that post-date the removal. But as Judge Jacobs explained in his dissent, "[e]very court of appeals to address the issue in a published opinion" has disagreed. Dissenting Op. 11. And until the panel's decision here, this Court too had agreed, in summary dispositions, with the overwhelming majority position. As Judge Jacobs further explained, the panel's decision was incorrect: a court must decide whether to award fees and costs against a removing defendant based on the facts and circumstances at the time of removal, not based on unknown and unpredictable future developments. The panel's holding creates a lopsided circuit conflict, is inconsistent with Supreme Court precedent, and, if allowed to stand, will be a significant deterrent to future defendants considering whether to exercise the right to remove a case to federal court. The petition for rehearing en banc should be granted.

## BACKGROUND

1.    This case is the second attempt by plaintiff-appellee City of New York to impose liability on the energy industry for global climate change. Appellee's first attempt was an action filed directly in federal court based on diversity jurisdiction. *See City of New York* v. *Chevron Corp.*, 993 F.3d 81, 88,

94 (2d Cir. 2021).  It ended with this Court unanimously affirming dismissal, holding that a municipality may not "utilize state tort law to hold multinational oil companies liable for the damages caused by global greenhouse gas emissions." *Id.* at 85.

Three weeks after that decision, on April 22, 2021, appellee filed this lawsuit.  *See* J.A. 10-108.  Appellee named some of the same defendants as the first suit—Exxon Mobil Corporation, BP p.l.c., and Shell plc (formerly known as Royal Dutch Shell plc)—and added others—ExxonMobil Oil Corporation, Shell Oil Company (now known as Shell USA, Inc.), BP America Inc., and the American Petroleum Institute.  *See* J.A. 18-28.  Appellant ExxonMobil Oil Corporation is the only defendant resident in the State of New York.  *See* J.A. 19.

As in appellee's first lawsuit, the complaint here alleges that climate change is "one of the greatest threats facing humanity" and that the appellants have "systematically and intentionally misled consumers  .  .  .  about the central role their products play in causing the climate crisis." J.A. 15.  In this case, appellee asserts that the alleged conduct is actionable under municipal consumer-deception law.  *See* J.A. 60-67.  Notably, appellee filed this case in New York state court, rather than federal court.

2.    Appellants removed this action to federal court on May 28, 2021. *See* J.A. 109-205.  The notice of removal asserted seven grounds for removal: (1) federal-question jurisdiction based on the application of federal common

2

law; (2) the federal-officer removal statute, 28 U.S.C. § 1442; (3) the Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C. § 1349(b)(1); (4) federal-enclave jurisdiction; (5) diversity jurisdiction; (6) the Class Action Fairness Act, 28 U.S.C. § 1332(d); and (7) the substantial-federal-question doctrine. *See* J.A. 123-125. With respect to diversity jurisdiction, appellants argued that complete diversity was present because appellee fraudulently joined ExxonMobil Oil Corporation. *See* J.A. 193-197. Appellee moved to remand to state court, and briefing was complete by September 2021. *See* D. Ct. Dkt. 37, 49.

A few days after appellants removed this action, a court in the District of Connecticut granted a motion to remand a similar climate-change case filed by the State of Connecticut against Exxon Mobil Corporation. *See Connecticut* v. *Exxon Mobil Corp.*, Civ. No. 20-1555, 2021 WL 2389739, at *2 (June 2, 2021). Exxon Mobil Corporation appealed, and this Court subsequently stayed the remand order pending appeal. *See Connecticut* v. *Exxon Mobil Corp.*, Civ. No. 21-1446, Dkt. 80 (Oct. 5, 2021). Given the similarity between the cases and the asserted grounds for removal, the district court in this case then stayed the action pending this Court's decision on appeal from the order in *Connecticut*. J.A. 206-207.

This Court issued its decision in *Connecticut* in September 2023. It rejected ExxonMobil's arguments for removal based on federal common law, the

substantial-federal-question doctrine, the federal-officer removal statute, and OCSLA. *See* 83 F.4th 122, 132-147 (2023).

3.     After the Court issued its decision in *Connecticut*, the district court here lifted the stay, denied the motion to remand, and invited appellee to resubmit its motion. *See* J.A. 208-209. Appellants opposed appellee's renewed motion for remand. *See* D. Ct. Dkt. 72. The opposition included grounds not addressed in *Connecticut*, including diversity jurisdiction, federal-enclave jurisdiction, and the Class Action Fairness Act. *See id.* at 8-14, 29-32. It also included some grounds similar to those addressed in *Connecticut* but supported by arguments not presented there, such as an argument that the federal common law of transboundary pollution completely preempts appellee's claims (an issue expressly left open in *Connecticut*) and the particular theory of substantial-federal-question jurisdiction presented here. *See id.* at 14-24, 32-34. It further included grounds asserted only for the purpose of preservation for further appellate review. *See id.* at 24-29. Appellants abandoned their other arguments, such as jurisdiction under OCSLA and arguments that this Court directly rejected in *Connecticut*. *See* J.A. 210-214. Appellee requested an award of fees and costs under 28 U.S.C. § 1447(c). D. Ct. Dkt. 69, at 34-35.

4.     The district court granted appellee's motion to remand and granted in part appellee's request for fees and costs. *See* J.A. 215-238. (The

district court's decision to remand the case is not at issue in this appeal.) With respect to the fee award, the court determined that appellants' argument for removal based on diversity jurisdiction and the fraudulent-joinder doctrine was objectively reasonable. *See* J.A. 237. In the court's words: "[a]lthough [appellants'] diversity jurisdiction argument was not a winner, the Court cannot say that it was unreasonable for [appellants] to press that argument." *Id.* Rather than denying the request for fees and costs, however, the court awarded fees and costs for the five other grounds for removal that appellants had asserted in opposition to appellee's renewed motion to remand. *See id.*

In so doing, the district court acknowledged that appellants "may have removed this case in good faith in 2021." J.A. 236. But the court stated that, regardless of "[w]hatever may have been the state of play in 2021," fees and costs were warranted because appellants had made arguments that "it was not reasonable for [them] to press when [appellee] renewed its motion for remand." J.A. 236-237. In particular, the court stated that several of appellants' arguments "had largely been decided by [this Court] in *Connecticut*." J.A. 237. It also rejected removal based on federal-enclave jurisdiction and the Class Action Fairness Act, noting that those arguments "had been roundly rejected by countless courts throughout the country" "in the three years since the Connecticut district court denied fees in *Connecticut*." J.A. 236.

5.     A divided panel of this Court affirmed the award of fees and costs. The majority acknowledged that the district court found that appellants' removal and arguments concerning diversity jurisdiction were objectively reasonable.  Op. 26.  But the majority nonetheless held that the fee award could be affirmed on the ground that this case presented "unusual circumstances" supporting the imposition of fees and costs notwithstanding the presence of an objectively reasonable ground for removal.  Op. 23-26.  The majority based that conclusion not on any finding of "unusual circumstances" by the district court but instead on its own conclusion that "efforts to remove similar state cases to federal court had been rejected."  Op. 24-25.

The majority next held that the reasonableness of appellants' grounds for removal could be assessed as of the time of appellants' opposition to the renewed motion to remand and need not be assessed as of the time of removal.  Op. 27-29.  According to the majority, the proper inquiry was not "whether [appellants] had reasonable grounds for removing the case in 2021" but was instead whether appellants "had reasonable grounds for prolonging litigation by continuing to oppose remand."  Op. 28.

The majority offered three rationales to support that conclusion.  *First*, the majority stated that it was considering "the unusual timeline of the proceedings in the case," which resulted in the "state of the law . . . chang[ing] from 2021 to 2023" while the case was stayed.  Op. 27.  *Second*, the majority

6

reasoned that appellants "had the ability in 2023 to evaluate this Court's ruling in *Connecticut*—as well as all the other decisions from around the country—to decide whether to persist in its opposition to remand." Op. 28. *Third*, the majority reasoned that "neither [Section] 1447(c) nor *Martin* [v. *Franklin Capital Corp.*, 546 U.S. 132 (2005),] places limits on the timing of a district court's fees analysis." Op. 28. As the majority saw it, a "rule limiting the temporal scope of the court's analysis would unduly restrict its discretion to award fees 'when such an award is just.'" Op. 28.

Judge Jacobs dissented. He disagreed with the majority's assessment that this case presented "unusual circumstances," because there were "no circumstances other than the surplus of claims, which is by no means unusual." Dissenting Op. 3. He would have further held that the district court committed reversible error by not assessing the reasonableness of removal as of the time of removal. Dissenting Op. 9-13. As he explained, "the Supreme Court teaches that Section 1447(c) awards punish only the act of 'frivolously remov[ing]': bringing a state court action to federal court when it clearly does not belong there." Dissenting Op. 3 (quoting *BP p.l.c.* v. *Mayor & City Council of Baltimore*, 593 U.S. 230, 246 (2021)). Judge Jacobs noted that "[e]very court of appeals to address the issue in a published opinion appears to have" held that reasonableness is assessed at the time of removal. Dissenting Op. 11-12 (citing cases). And "a panel of this Court has agreed in a summary order." *Id.* at 12

7

(citing *Williams* v. *International Gun-A-Rama*, 416 Fed. Appx. 97, 99 (2d Cir. 2011)). Assessing reasonableness as of the time of removal is the correct approach, Judge Jacobs contended, because the "Section 1447(c) inquiry concerns *the removal itself*, not a party's *later opposition to remand*." *Id*. at 11.

The district court's error required reversal, Judge Jacobs reasoned, because the district court "conceded that 'defendants may have removed this case in good faith in 2021.'" Dissenting Op. 10. Moreover, "parties often preserve arguments for consideration, reconsideration, or review, and the Supreme Court has warned against imposing sanctions for doing so." *Id*. at 12. "What is frivolous in this case," Judge Jacobs remarked, is "the claim, not its removal." *Id*. at 13. As he observed, despite "the indulgent New York pleading standard," the case was dismissed on the pleadings on remand in state court. *Id*. at 13-14 (citing *City of New York* v. *Exxon Mobil Corp.*, 226 N.Y.S.3d 863 (Sup. Ct., N.Y. Cnty. 2025)).

## REASONS FOR GRANTING REHEARING EN BANC

The panel's decision warrants rehearing en banc because it conflicts with decisions of every other court of appeals to have considered the issue; it cannot be reconciled with Supreme Court precedent; and it will lead to significant adverse consequences for defendants sued in state court. *See* Fed. R. App. P. 40(b)(2)(A), (C)-(D).

8

### A.    The Panel's Decision Conflicts With Decisions Of This Court And Other Courts

The panel majority held that the reasonableness of removal for purposes of an award of fees and costs under 28 U.S.C. § 1447(c) can be assessed based on factual and legal developments postdating the time of removal.  Op. 27-29. In so doing, the majority departed from the consensus of eight other courts of appeals as well as unpublished dispositions of this Court.  Rehearing en banc is warranted to resolve that conflict.[*]

1.    The panel's holding that the district court did not need to assess the reasonableness of removal as of the time of removal conflicts with the uniform consensus among the federal courts of appeals.  For example, in *Valdes* v. *Wal-Mart Stores, Inc.*, 199 F.3d 290, 293 (2000), the Fifth Circuit "evaluate[d] the objective merits of removal at the time of removal, irrespective of the fact that it might ultimately be determined that removal was improper." The Fifth Circuit proceeded to disregard a post-removal decision when evaluating a request for fees and costs, noting that the defendant "did not have the benefit of [that] case when it removed the action to district court."  *Id*. at 294.

---

[*] The panel also incorrectly held that the district court's award could be affirmed because the case presented "unusual circumstances" that allowed the imposition of fees and costs even in the presence of at least one reasonable ground for removal.  *See* Op. 23-26.  Appellants reserve the right to seek further review of that holding.

The Seventh Circuit's decision in *Lott* v. *Pfizer*, 492 F.3d 789 (2007), is to the same effect. There, the court recognized that, in *Martin* v. *Franklin Capital Corp.*, 546 U.S. 132 (2005), the Supreme Court had "approved" the decision in *Valdes*, which "examin[ed] the clarity of the law at the time the notice of removal was filed." *Lott*, 492 F.3d at 792. Drawing an analogy to qualified immunity, the Seventh Circuit concluded that fees and costs were permitted under Section 1447(c) if, "at the time the defendant filed his notice in federal court, clearly established law demonstrated that he had no basis for removal." *Id.* at 793. That standard, the Seventh Circuit explained, appropriately "encourages litigants to make liberal use of federal courts, so long as the right to remove is not abused." *Id.*

The Tenth Circuit's decision in *Martin* v. *Franklin Capital Corp.*, 393 F.3d 1143 (2004)—which the Supreme Court affirmed, *see* 546 U.S. 132—is of a piece. There, the defendants removed a case on diversity grounds, arguing that the amount in controversy was satisfied through the aggregation of punitive damages across a putative class. *See* 393 F.3d at 1148. At the time, the Tenth Circuit had not weighed in on the issue, but two other circuits appeared to approve of that approach to satisfying the amount in controversy. *See id.* After removal, however, the decisions of those circuits were "severely limited and overruled," and the Tenth Circuit later rejected the aggregation of punitive damages. *Id.* The Tenth Circuit nevertheless upheld the district court's

decision not to award fees under Section 1447(c), reasoning that the defendants had "legitimate grounds" for removal "when [they] . . . removed th[e] action to federal court." *Id.* at 1151.

The Fifth, Seventh, and Tenth Circuits are not alone in assessing the reasonableness of removal for purposes of Section 1447(c) based on the law and circumstances at the time of removal. The published decisions of five other courts of appeals are in accord. *See Virgin Islands Housing Authority* v. *Coastal General Construction Services Corp.*, 27 F.3d 911, 917 (3d Cir. 1994); *Ohio ex rel. Skaggs* v. *Brunner*, 629 F.3d 527, 533 (6th Cir. 2010); *Convent Corp.* v. *City of North Little Rock*, 784 F.3d 479, 483 (8th Cir. 2015); *Lussier* v. *Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1066 (9th Cir. 2008); *Legg* v. *Wyeth*, 428 F.3d 1317, 1320 (11th Cir. 2005).

2. Until the panel's divided decision in this case, this Court's decisions have followed that consensus approach. In unpublished dispositions, the Court has held that "[o]bjective reasonableness is evaluated based on the circumstances as of the time that the case was removed." *Williams* v. *International Gun-A-Rama*, 416 Fed. Appx. 97, 99 (2011); *accord Tamm* v. *Cincinnati Insurance Co.*, 858 Fed. Appx. 412, 414 (2021). And the Court has applied a general rule that a court should assess a defendant's right to removal as of "the time the removal notice is filed." *Vera* v. *Saks & Co.*, 335 F.3d 109, 116 n.2 (2003).

11

The panel departed from those decisions with little acknowledgement of the substantial weight of authority that conflicts with its holding. The decision puts this Court on an island of its own in a lopsided eight-to-one circuit conflict. The Court should grant rehearing to realign its precedent with the precedent of other courts.

### B. The Panel's Decision Is Incorrect

The panel held that the reasonableness of removal for purposes of Section 1447(c) need not be assessed as of the time of removal. Instead, the panel affirmed the award based exclusively on its assessment of the reasonableness of arguments that appellants made years later, not by re-removing the case in 2023, but solely for opposing the renewed motion to remand. That holding is erroneous and warrants the full Court's review.

1. Section 1447(c) permits the award of fees and costs "incurred as a result of the removal" whenever doing so would be "just." 28 U.S.C. § 1447(c). In *Martin*, the Supreme Court analyzed the "large objectives" of Section 1447(c) and reasoned that the "appropriate test" for awarding fees and costs should reflect "the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to removal as a general matter, when the statutory criteria are satisfied." 546 U.S. at 139-140.

12

The Court ultimately adopted a standard focused on the "reasonableness" of removal. *See Martin*, 546 U.S. at 141. The Court held that, "[a]bsent unusual circumstances, courts may award attorney's fees under [Section] 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Id.* "Conversely, when an objectively reasonable basis exists, fees should be denied." *Id.*; *see also*, *e.g.*, *Calabro* v. *Aniqa Halal Live Poultry Corp.*, 650 F.3d 163, 166 (2d Cir. 2011) (applying *Martin*). Under *Martin*, therefore, a district court "abuses its discretion in awarding attorney's fees for an incorrect removal if the removing party had an objectively reasonable basis for removal." *Knop* v. *Mackall*, 645 F.3d 381, 382 (D.C. Cir. 2011) (Kavanaugh, J.) (internal quotation marks and citation omitted).

As Judge Jacobs explained in his dissent here, *Martin* "indicates[] that the Section 1447(c) inquiry concerns *the removal itself*, not a party's *later opposition to remand*." Dissenting Op. 11. Several aspects of *Martin* support that conclusion. The standard ultimately adopted in *Martin* focuses on whether the defendant had a reasonable basis "for seeking removal," and not to arguments later made in opposing a motion to remand. *See* 546 U.S. at 141. The Supreme Court likewise directed courts to look back in time to consider whether "the removing party lacked an objectively reasonable basis." Dissenting Op. 11 (citing *Martin*, 546 U.S. at 141). In adopting that standard, the Court expressed a desire to avoid "undermining Congress' basic decision to

13

afford defendants a right to remove as a general matter." *Martin*, 546 U.S. at 140. And finally, as already noted, *see* p. 10, the Court in *Martin* approvingly cited the Fifth Circuit's decision in *Valdes*, which expressly "evaluate[d] the objective merits of removal at the time of removal." *See id.* at 141; *Valdes*, 199 F.3d at 293. So considered, the panel's decision contravenes *Martin*.

Post-*Martin* case law also contradicts the majority's holding. The Supreme Court has since characterized Section 1447(c) as authorizing fees and costs if the defendant "frivolously *removes* a case from state court," thus focusing on the decision to remove rather than arguments later made in opposing remand. *BP p.l.c.* v. *Mayor & City Council of Baltimore*, 593 U.S. 230, 246 (2021) (emphasis added). And as already explained, pp. 9-12, eight different courts of appeals, as well as this Court in summary dispositions, have held that an award of fees and costs should be assessed based on the law and circumstances as of the time of removal. The panel did not cite a single case in support of its rule.

2.   The panel offered two principal reasons for assessing the reasonableness of removal based on the law and circumstances as they existed at the time of appellants' opposition to the renewed motion to remand rather than as of the time of removal. *See* Op. 27-29. Neither is persuasive.

14

The panel first reasoned that fees were appropriate because of the "unusual timeline of the proceedings," the fact that "the state of the law had indeed changed from 2021 to 2023," and that "the case was stayed in the district court precisely to give the parties the benefit of this Court's decision in *Connecticut*." Op. 27-28. But as Judge Jacobs explained, "parties often preserve arguments for consideration, reconsideration, or review, and the Supreme Court has warned against imposing sanctions for doing so." Dissenting Op. 12 (citing *McKnight* v. *General Motors Corp.*, 511 U.S. 659, 659-660 (1994) (per curiam)). And in any event, the panel's case-specific justifications offer no principled reason for permitting fees under Section 1447(c). Arguments made to "avoid a later remand, like those in virtually any context, are instead the province of sanctions under Fed. R. Civ. P. 11, or 28 U.S.C. § 1927, for vexatious multiplication of proceedings, or the court's inherent authority." Dissenting Op. 3-4 (internal quotation marks, brackets, and citations omitted). And critically, each of those other sources of authority "has attendant procedural protections distinct from Section 1447(c)." Dissenting Op. 4.

The panel also reasoned that, because "neither [Section] 1447(c) nor *Martin* places limits on the timing of a district court's fees analysis," the district court may award fees whenever doing so would be "just." Op. 28-29. The majority's conclusion does not follow from its premise. To be sure, Section 1447(c) does not impose any time limitations on awarding costs and fees for a

15

removal. But as *Martin* explains, the "fact that an award of fees under [Section] 1447(c) is left to the district court's discretion" does "not mean that no legal standard governs that discretion." 546 U.S. at 139. And as numerous courts have held, one legal rule that appropriately cabins the discretion of district courts under Section 1447(c) is that removal should be assessed based on the facts and circumstances at the time of removal and not later. *See* pp. 9-12, *supra*. That rule ensures that defendants are not discouraged from removing cases unless the law is well settled. The panel offered no compelling justification for its contrary, ad hoc approach.

## C. The Panel's Decision Will Have Significant Adverse Effects And Warrants Review

The panel's decision creates new risks for defendants sued in state court that will discourage them from invoking their statutory right to remove a case to federal court. If fees and costs can be assessed based on unpredictable factual and legal developments long after removal, "defendants might choose to exercise [that] right only in cases where the right to remove [is] obvious." *Martin*, 546 U.S. at 140. But "there is no reason to suppose Congress meant to confer a right to remove, while at the same time discouraging its exercise in all but obvious cases." *Id*. Absent the full Court's review, the panel's decision will likely have a discouraging effect on defendants assessing whether to remove a case from state to federal court.

16

This Court's full review is warranted to prevent the erroneous application of the law in a manner that undermines a defendant's statutory right to removal. The panel's decision is inconsistent with every court of appeals to assess the same issue, and it should not be permitted to stand.

## CONCLUSION

The petition for rehearing en banc should be granted.

Respectfully submitted,

/s/ Kannon K. Shanmugam

MAURA K. MONAGHAN
DEBEVOISE & PLIMPTON LLP
  66 Hudson Boulevard
  New York, NY 10001

Attorney for Shell plc (f/k/a Royal
Dutch Shell plc) and Shell USA, Inc.
(f/k/a Shell Oil Company)

AARON F. JAROFF
MCGUIREWOODS LLP
  1251 Avenue of the Americas,
    20th Floor
  New York, NY 10020

BRIAN D. SCHMALZBACH
MCGUIREWOODS LLP
  800 East Canal Street
  Richmond, VA 23219

Attorneys for the American
Petroleum Institute

KANNON K. SHANMUGAM
WILLIAM T. MARKS
BERNADETTE R. NELSON
JAKE L. KRAMER
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
  2001 K Street, N.W.
  Washington, DC 20006
  (202) 223-7300
  kshanmugam@paulweiss.com

THEODORE V. WELLS, JR.
DANIEL J. TOAL
DAVID K. KESSLER
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
  1285 Avenue of the Americas
  New York, NY 10019

Attorneys for Exxon Mobil
Corporation and ExxonMobil
Oil Corporation

DIANA E. REITER
ARNOLD & PORTER KAYE
  SCHOLER LLP
  250 West 55th Street
  New York, NY 10019

Attorney for BP p.l.c. and
BP America Inc.

OCTOBER 17, 2025

18

## CERTIFICATE OF COMPLIANCE
## WITH TYPEFACE AND WORD-COUNT LIMITATIONS

I, Kannon K. Shanmugam, counsel for appellants Exxon Mobil Corporation and ExxonMobil Oil Corporation and a member of the Bar of this Court, certify, pursuant to Federal Rules of Appellate Procedure 32(a)(5) and 40(b)(1), that the foregoing petition is proportionately spaced, has a typeface of 14 points or more, and contains 3,891 words.

OCTOBER 17, 2025

/s/ Kannon K. Shanmugam
KANNON K. SHANMUGAM

# APPENDIX

24-1568-cv
*The City of New York v. Exxon Mobil Corp.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

―――――――――――――

August Term 2024

(Argued:  March 4, 2025     Decided: October 3, 2025)

Docket No. 24-1568-cv

―――――――――――――

THE CITY OF NEW YORK,

*Plaintiff-Appellee,*

v.

EXXON MOBIL CORPORATION; EXXONMOBIL OIL CORPORATION;
ROYAL DUTCH SHELL PLC; SHELL OIL COMPANY; BP P.L.C.;
BP AMERICA INC.; AMERICAN PETROLEUM INSTITUTE,

*Defendants-Appellants.*

―――――――――――――

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

―――――――――――――

Before:  JACOBS, CHIN, AND MERRIAM, *Circuit Judges.*

―――――――――――――

Appeal from an opinion and order of the United States District Court for the Southern District of New York (Caproni, *J.*), granting in part the City of New York's motion for attorneys' fees and costs. The City filed suit against defendant-appellant oil companies in New York state court alleging deceptive advertising practices under New York state law. The oil companies removed the case to federal court, and the City moved to remand the case to state court. The proceedings were stayed pending a decision in a similar case in this Court. After this Court ruled in the other case, addressing issues similar to those raised here, the district court lifted the stay and denied the motion to remand without prejudice to allow the parties to re-brief the issues with the benefit of this Court's decision. The City refiled the motion to remand and also requested attorneys' fees and costs pursuant to 28 U.S.C. § 1447(c). The oil companies opposed both the motion to remand and the request for fees and costs. The district court granted the motion to remand and awarded the City attorneys' fees and costs to cover a portion of the proceedings. The oil companies appeal the award of attorneys' fees and costs.

AFFIRMED.

JUDGE JACOBS DISSENTS IN A SEPARATE OPINION.

- 2 -

_____

KANNON K. SHANMUGAM (Kyle Smith, William T. Marks, Jake L. Kramer, *on the brief*), Paul, Weiss, Rifkind, Wharton & Garrison LLP, Washington, DC, and

Theodore V. Wells, Jr., Daniel J. Toal, David K. Kessler, *on the brief*, Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, NY, *for Defendants-Appellants.*

HILARY MELTZER (Alice R. Baker, Nathan Taylor, Tess Dernbach, *on the brief*), for Muriel Goode-Trufant, Corporation Counsel of the City of New York, New York, NY, and

Victor M. Sher, Matthew K. Edling, Quentin C. Karpilow, Anna D. Applebaum, *on the brief*, Sher Edling LLP, San Francisco, CA, *for Plaintiff-Appellee.*

_____

CHIN, *Circuit Judge*:

Plaintiff-appellee City of New York (the "City") sued defendants-appellants Exxon Mobil Corporation, ExxonMobil Oil Corporation, Royal Dutch Shell PLC, Shell Oil Company, BP P.L.C., BP America Inc. and the American Petroleum Institute (collectively, "Exxon") in New York state court for deceptive advertising practices under New York state law.  Exxon removed the case to the

- 3 -

United States District Court for the Southern District of New York and the City

moved to remand.  The district court (Caproni, *J.*) stayed the motion to remand

to await decision in a similar case pending in this Court in which Exxon was

appealing a decision of the District of Connecticut remanding the case to the

Connecticut state court.  *See Connecticut v. Exxon Mobil Corp.*, 83 F.4th 122 (2d Cir.

2023) ("*Connecticut*").

  After we affirmed the district court's order remanding the similar

case, *Connecticut*, 83 F.4th at 147, the district court in the instant case lifted the

stay, denied the motion to remand without prejudice, and invited the parties to

re-brief the case with the benefit of our decision in *Connecticut*.  The City refiled

its motion to remand and also sought attorneys' fees and costs under 28 U.S.C.

§ 1447(c).  Exxon continued to oppose remand, asserting many of the same

arguments it had raised in its initial opposition papers (as well as in many other

cases filed around the country).

  The district court granted the motion for remand and granted in

part and denied in part the motion for attorneys' fees and costs.  *See City of New*

*York v. Exxon Mobil Corp.*, 733 F. Supp. 3d 296, 316 (S.D.N.Y. 2024).  It awarded

fees only with respect to five of the six grounds that Exxon had asserted as a

- 4 -

basis for removal and only for Exxon's renewed efforts to oppose remand.  *Id*. at

316.  The district court concluded that Exxon had not acted reasonably in

continuing to press arguments that had already been rejected by "the

overwhelming majority of federal district and circuit courts around the country,"

including in the *Connecticut* decision.  *Id*. at 315-16.

Exxon appeals the award of fees and costs.  Because we conclude

that the district court did not abuse its discretion in awarding fees and costs in

the circumstances here, we affirm.

## BACKGROUND

**A.**    ***The Removal Statute***

As a general matter, a civil case filed in state court may be removed

by the defendant to federal district court if the case could have been brought

there originally.  *See Martin v. Franklin Capital Corp.*, 546 U.S. 132, 134 (2005); 28

U.S.C. § 1441(a).  After a party removes a case to federal court, the opposing

party may seek to remand the case back to state court.  *See generally* 28 U.S.C.

§ 1447.  A motion to remand based on lack of subject matter jurisdiction may be

made "at any time before final judgment."  28 U.S.C. § 1447(c).  As we recognized

in *Connecticut*, "the 'defendant always has the burden of establishing that

- 5 -

removal is proper.'"  83 F.4th at 132 (quoting *United Food & Com. Workers Union, Local 919, AFL-CIO v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994)).  The removal statute must be construed narrowly, resolving any doubts against removability.  *See Connecticut*, 83 F.4th at 132 (citing *Platinum-Montaur Life Scis., LLC v. Navidea Biopharmaceuticals, Inc.*, 943 F.3d 613, 617 (2d Cir. 2019)).  Indeed, "[o]ut of respect for state courts, [the Supreme] Court has time and again declined to construe federal jurisdictional statutes more expansively than their language, most fairly read, requires."  *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 578 U.S. 374, 389 (2016) (affirming judgment remanding case to state court).

Under the "well-pleaded complaint rule," federal question jurisdiction "generally 'exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint,'" and it cannot be triggered based on "a federal defense."  *Connecticut*, 83 F.4th at 132 (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 393 (1987)) (internal quotation marks omitted); *accord Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003) ("As a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim.").

- 6 -

There are three exceptions to the well-pleaded complaint rule, which are to be "tightly circumscribed." *Connecticut*, 83 F.3d at 133. These are:

> first, if Congress expressly provides, by statute, for removal of state law claims . . . ; second, if the state law claims are completely preempted by federal law . . . ; and third, in certain cases if the vindication of a state law right necessarily turns on a question of federal law . . . .

*Fracassse v. People's United Bank*, 747 F.3d 141, 144 (2d Cir. 2014) (citations omitted); *accord Connecticut*, 83 F.3d at 133.

The statute also provides for the award of attorneys' fees: "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). We discuss § 1447(c) in more detail below.

**B.** *State Court Actions against Exxon*

**1.** *Jurisdictions other than Connecticut and New York*

Starting in approximately 2017, numerous state and local entities sued Exxon (and, in some instances, other oil companies as well) in different state courts under state and local deceptive advertising, nuisance, and other consumer protection laws. In response, Exxon repeatedly removed the cases to federal court. The state and local entities moved to remand, and Exxon opposed,

consistently raising the same or similar grounds for removal as proffered in this case. In virtually all of those cases, Exxon failed in its efforts to oppose remand, as its jurisdictional arguments were roundly rejected, both before it renewed its opposition to remand in this case (November 11, 2023)[1] and thereafter, as courts continued to reject its jurisdictional arguments in later cases.[2] Indeed, Exxon has

---

[1] In the following decisions, circuit courts affirmed district court orders remanding a case to state court where the oil companies, including Exxon, argued that removal was appropriate based on, *inter alia,* the preemption doctrine and federal question (including the Outer Continental Shelf Lands Act (the "OCSLA"), 43 U.S.C. § 1349(b)(1)), federal enclave, federal officer, bankruptcy, admiralty, and Class Action Fairness Act ("CAFA") jurisdiction. *See Minnesota v. Am. Petroleum Inst.*, 63 F.4th 703 (8th Cir. 2023); *Plaquemines Parish v. Chevron USA, Inc.*, No. 22-30055, 2022 WL 9914869 (5th Cir. Oct. 17, 2022) (mem.); *City of Hoboken v. Chevron*, 45 F.4th 699, 706 (3d Cir. 2022); *City & Cnty. of Honolulu v. Sunoco* LP, 39 F.4th 1101, 1111-12 (9th Cir. 2022); *Rhode Island v. Chevron Corp.*, 35 F.4th 44 (1st Cir. 2022); *Cnty. of San Mateo v. Chevron Corp.*, 32 F.4th 733, 749-51 (9th Cir. 2022); *Mayor & City Council of Baltimore v. BP P.L.C.*, 31 F.4th 178, 217-19 (4th Cir. 2022); *Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, 1275 (10th Cir. 2022). In *Platkin v. Exxon Mobil Corp.*, No. 22-CV-06733, 2023 WL 4086353, at *3 n.2 (D.N.J. June 20, 2023), the district court granted a motion to remand to state court, and the case does not appear to have been appealed. And in *District of Columbia v. Exxon Mobil Corp.*, 640 F. Supp. 3d 95, 106-07 (D.D.C. 2022), the district court granted remand before Exxon renewed its opposition to remand in this case, and the D.C. Circuit affirmed after it did so, 89 F.4th 144 (D.C. Cir. 2023).

[2] *See District of Columbia v. Exxon Mobil Corp.*, 89 F.4th 144 (D.C. Cir. 2023) (affirming district court's order remanding case to District of Columbia Superior Court); *City of Oakland v. BP P.L.C.*, No. 22-16810, 2023 WL 8179286 (9th Cir. Nov. 27, 2023) (affirming district court's order remanding case); *Anne Arundel Cnty., Maryland v. BP*

- 8 -

succeeded in keeping only *one* case in federal court, and even there the district

court denied the motion to remand "reluctantly." *Pac. Coast Fed'n of Fishermen's*

*Ass'ns v. Chevron Corp.*, No. 18-cv-07477, 2023 WL 7299195, at *1 (N.D. Cal. Nov.

1, 2023). There, the district court held that the case was properly removed "under

the Class Action Fairness Act, which permits removal of lawsuits brought under

state-law rules similar to Rule 23." *Id*. at *1. The Pacific Coast Federation of

Fishermen's Associations filed suit on behalf of itself and its members, as a

representative action authorized under section 382 of the California Code of Civil

Procedure, a California rule similar to Rule 23. *See id*. The district court noted

that all of the other grounds for removal offered by the defendants -- federal

common law, complete preemption, admiralty jurisdiction, federal enclave

-------

*P.L.C.*, 94 F.4th 343 (4th Cir. 2024) (affirming district court's order remanding case to state court); *City of Charleston v. Brabham Oil Co., Inc.*, No. 2:20-cv-03579, 2023 WL 11867279 (D.S.C. July 5, 2023) (granting motion to remand case to state court); *Vermont v. Exxon Mobil Corp.*, No. 2:21-cv-00260, 2024 WL 446086 (D. Vt. Feb. 6, 2024) (granting motion to remand case to state court); *County of Multnomah v. Exxon Mobil Corp.*, No. 3:23-cv-01213, 2024 WL 1991554 (D. Ore. Apr. 10, 2024) (granting motion to remand case to state court); *City of Chicago v. BP P.L.C.*, No. 24-cv-02496, 2025 WL 1426163 (N.D. Ill. May 16, 2025) (granting motion to remand case to state court); *Makah Indian Tribe v. Exxon Mobil Corp.*, No. 2:24-cv-00157, No. 2:24-cv-00158, 2025 WL 913767 (W.D. Wash. Mar. 26, 2025) (granting motion to remand case to state court).

jurisdiction, bankruptcy jurisdiction, OCSLA, First Amendment, and the federal

officer removal statute -- lacked merit.  *See id.* at *3.

In short, with the exception of the one Northern District of

California case in which only one out of nine asserted bases for removal was

accepted, Exxon has repeatedly failed in its efforts to remove these cases from

state and local courts.

### 2. *The* Connecticut *Decision*

Before filing its removal motion in this case, Exxon had already

removed a similar case filed under Connecticut state law in Connecticut state

court to the federal district court in Connecticut.  *See Connecticut v. Exxon Mobil*

*Corp.*, No. 3:20-cv-01555, 2021 WL 2389739, at *2 (D. Conn. June 2, 2021).  In that

case, Connecticut sued Exxon under the Connecticut Unfair Trade Practices Act

alleging that Exxon knowingly misled and deceived Connecticut consumers

about the negative climatological effects of fossil fuels that the company was

marketing to consumers.  *See Connecticut*, 83 F.4th at 129.

After Exxon removed the case, Connecticut moved to remand.  The

district court granted the motion and Exxon appealed to this Court.  In its appeal,

Exxon offered several grounds for removal, including three that were asserted in

the instant case: (1) the federal question statute, 28 U.S.C. § 1331; (2) the federal officer removal statute, 28 U.S.C. § 1442(a)(1); and (3) the OCSLA, 43 U.S.C. § 1349(b)(1). *See* 83 F.4th at 129.

On September 27, 2023, this Court issued its opinion in *Connecticut*, affirming the district court's granting of the motion for remand. We explained that removal to federal court is generally limited to cases where the complaint could have been filed in federal court initially, including cases that "arise[] under the laws of the United States" as provided by the federal question statute, 28 U.S.C. § 1331. *Id.* at 132. We noted that under the well-pleaded complaint rule, federal question jurisdiction generally exists "only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Id.* (citations omitted). We reiterated that federal jurisdiction cannot be based on a federal defense "even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Id.* (citations omitted). We rejected Exxon's arguments that any of the three exceptions to the well-pleaded complaint rule applied, *see id.* at 133, and we found no basis for removal, as follows:

1.    We rejected Exxon's argument that removal was warranted because the state law claims were preempted by federal law.  We noted that Connecticut's claims involved only *ordinary* preemption, not *total* preemption as required to meet the exception.  *See id.* at 135-36 ("Exxon Mobil's argument for a 'federal-common-law exception' would appear to hinge on the proposition that the well-pleaded complaint rule must yield not only in situations of 'complete[] preempt[ion]' . . . but also in certain situations of *ordinary* preemption.  That proposition, however, is contrary to 'settled law' dating back 'since 1887.'" (citations and footnote omitted) (emphasis in original)).

2.    We rejected Exxon's argument that removal was appropriate based on the third exception to the well-pleaded complaint rule because the vindication of the state law rights turned on a question of federal law.  *See id.* at 139-40 (referring to the exception recognized in *Grable & Sons Metal Prod. Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 305, 312 (2005)).  Exxon argued that federal common law was at stake here because Connecticut's claims "implicate[d] the federal common law of transboundary pollution."  *Connecticut*, 83 F.4th at 140 (citation omitted).  We rejected that argument because the law of transcontinental pollution was not a necessary element of the deceptive advertising practices

- 12 -

claim at issue here.  *Id.* at 140 ("[T]he 'mere *presence* of a federal issue in a state

cause of action' is insufficient; the pertinent 'question of federal law' must be 'a

*necessary element* of one of the well-pleaded state claims.'" (emphases in original)

(citations omitted)).

       3.     We rejected Exxon's argument that there was federal

jurisdiction based on the federal officer removal statute, 28 U.S.C. § 1442(a)(1).

*Id*. at 142-145.  Exxon alleged that although it was not an *actual* "federal officer,"it

qualified as a "federal officer" because it leased drilling sites from the federal

government, operated such sites, and paid royalites to the federal government.

*Id*. at 143.  We disagreed.  *Id.* (observing that this argument had been made to

"five of our sister circuits, all of which have squarely rejected it").

       4.     We rejected Exxon's argument that there was federal

jurisdiction because Exxon "contributed significantly to the United States military

by providing fossil fuels that support the national defense."  *Id*. at 144 (citation

omitted).  In doing so, we noted that "when Exxon Mobil recently made similar

arguments . . . the Fifth Circuit flatly rejected them."  *Id.*

       5.     We rejected Exxon's argument that there was jurisdiction

under the OCSLA, which provides federal jurisdiction over actions arising out of

operations conducted on the outer continental shelf. *Id.* at 145-46. We observed that "[t]his argument brings us back to ground well-trodden by our sister circuits. Exxon Mobil has made virtually the same argument to five other courts of appeals, all of which have rejected it." *Id.* at 146.

**3.** *New York -- The Instant Case*

As noted above, the City sued Exxon in New York state court in April 2021 for violations of New York City's Consumer Protection Law ("CPL"). Specifically, the City alleged that Exxon violated the CPL by misleading consumers in New York City about the role of Exxon's products in contributing to climate change.

On May 28, 2021, Exxon removed the case to the district court below asserting seven grounds for federal jurisdiction:

> 1. federal question jurisdiction, based on federal common law governing transboundary pollution and foreign affairs;
>
> 2. the federal officer removal statute, 28 U.S.C. § 1442;
>
> 3. the OCSLA;
>
> 4. federal enclave jurisdiction (contending that Exxon's production and sale of fossil fuels occurred in "federal enclaves");

- 14 -

5.      diversity jurisdiction;

6.      CAFA; and

7.      federal constitutional issues, specifically, the First Amendment.

*See generally* 733 F. Supp. 3d at 304 (reviewing Exxon's grounds for removal and noting that Exxon had "abandoned" its argument that the court had jurisdiction pursuant to the OCSLA). *Id.* at 304 n.2.

On June 25, 2021, the City moved to remand. Exxon opposed. On November 12, 2021, the district court stayed the case pending a decision by this Court in *Connecticut*.

On September 27, 2023, we issued our opinion in *Connecticut*, affirming the district court's order remanding the case to the Connecticut state court. *See* 83 F.4th at 147.

In light of that decision, on October 2, 2023, the City asked the district court to lift the stay in this case and decide its motion to remand. **[JA 7].** On October 4, 2023, the district court lifted the stay but denied the motion to remand, without prejudice, to allow the parties to re-brief the issues with the benefit of our decision in *Connecticut*.

- 15 -

The next day, October 5, 2023, counsel for the City wrote an email to counsel for Exxon, asking Exxon to consider withdrawing the grounds for removal addressed in *Connecticut*, so that the parties could "avoid spending time re-briefing issues that are controlled by the Second Circuit's recent decision." Joint App'x at 213. Exxon's counsel agreed only that "*Connecticut* controls the third ground for removal (OCSLA)," and contended that otherwise *Connecticut* was not controlling. Joint App'x at 211. *See Connecticut*, 83 F.4th at 145-47 (rejecting OCSLA as basis for federal jurisdiction).

On October 20, 2023, the City refiled its motion to remand and also sought attorneys' fees and costs under § 1447(c). On November 11, 2023, Exxon opposed the motion. Exxon dropped the OCSLA argument, but pressed two arguments that we had specifically rejected in *Connecticut*: federal question jurisdiction based on federal common law governing transboundary pollution and foreign affairs, *see* 733 F. Supp. 3d at 305-08, and the federal officer removal statute, *see id.* at 308; *see also Connecticut*, 83 F.4th at 132-42, 142-45 (addressing federal question jurisdiction and the federal officer removal statute). Exxon also reiterated four arguments that it had raised in its initial opposition to remand in this case, which had not been addressed (at least not explicitly) in *Connecticut*: (1)

- 16 -

federal enclave jurisdiction; (2) diversity jurisdiction; (3) class action jurisdiction; and (4) federal constitutional claims, *i.e.*, the First Amendment.[3]  Hence, the parties briefed six grounds asserted by Exxon as a basis for federal subject matter jurisdiction.

On May 8, 2024, the district court issued an opinion granting the City's motion to remand and granting in part the City's request for attorneys' fees and costs.  733 F. Supp. 3d at 303, 316.

First, the district court reviewed -- and rejected -- the six grounds asserted by Exxon for federal jurisdiction:

1.    The district court rejected Exxon's argument that federal common law governing transboundary pollution and foreign affairs dominated the field such that any claims involving those areas necessarily arose under federal law, noting that Exxon had "made the same argument in many if not all

_____

[3]     We did not explicitly address the First Amendment issue in *Connecticut* because there, as the district court noted, Exxon abandoned the argument on appeal.  *See* 733 F. Supp. 3d at 316 n.17.  In *Connecticut*, however, we reiterated that federal question jurisdiction cannot be based on a federal defense.  *See* 83 F.4th at 132.  Based on this reasoning the district court concluded that Exxon's reliance on a First Amendment defense was "not objectively reasonable following *Connecticut*."  733 F. Supp. 3d. at 316 n.17.

- 17 -

of the similar consumer protection cases filed by other state and local governments" and "[n]one has succeeded." 733 F. Supp. 3d at 306 & n.4 (citing numerous decisions). The district court observed that the City's claims were "about false and misleading advertisements," not about "emissions." *Id.* at 306.

2. The district court rejected Exxon's reliance on the federal officer removal statute, noting that it had been rejected in *Connecticut*. *Id*. at 308.

3. The district court rejected Exxon's reliance on federal enclave jurisdiction, calling it "the silliest of all of its arguments." *Id*. The district court noted that "[Exxon's] theory of federal enclave jurisdiction has been rejected by every court to consider it in similar consumer protection cases that touch on deception about climate change. The Court finds no reason to part company with those courts." *Id*. at 309 (footnote omitted citing numerous decisions). The district court noted in particular that Exxon's assertion that federal enclave jurisdiction existed because its advertisements reached federal enclaves was "absurd," because "all advertisements on the internet, television, radio and in newspapers can be viewed or heard by persons who happen to be in a federal enclave." *Id*.

4.      The district court rejected Exxon's argument that diversity jurisdiction existed because the one non-diverse defendant had been fraudulently joined, concluding that the complaint asserted a "colorable claim" against that party.  *Id*. at 310-11.

5.      The district court rejected Exxon's reliance on class action jurisdiction, characterizing it as "[s]econd in absurdity" to the federal enclave argument.  *Id*. at 312.  The district court noted that the complaint had not been filed under Rule 23 or a New York statutory equivalent and that New York law provided "a cause of action only for the City, which means a claim under [the New York City Code] bears absolutely no similarity to a class action."  *Id*. at 312-13.

6.      Finally, the district court rejected Exxon's reliance on the First Amendment as a basis for jurisdiction.  The district court concluded that, to the extent Exxon was arguing that its advertisements were protected by the First Amendment, "[t]he fact that [Exxon] may have a defense, even a defense rooted in the First Amendment, is not adequate to establish the [third] exception" to the well-pleaded complaint rule.  *Id*. at 314.  The district court noted that in *Connecticut* we had reiterated that the "mere *presence* of a federal issue in a state

- 19 -

cause of action is insufficient" to establish federal jurisdiction.  83 F.4th at 140; *see* 733 F. Supp. 3d at 314.

Second, the district court granted -- in part -- the City's request for attorneys' fees and costs.  It awarded fees and costs "in connection with arguments that it was not reasonable for [Exxon] to press when the City renewed its motion for remand: arguments that had largely been decided by the Circuit in *Connecticut* -- federal common law, federal officer removal, and First Amendment defenses, and those that were objectively absurd -- federal enclaves and CAFA."  733 F. Supp. 3d at 316 (footnote omitted).  In determining that these arguments were not reasonable, the court noted that the arguments at issue had been either abandoned or rejected in *Connecticut*, or had been universally rejected in every court in the country where they had been raised.  *Id.* at 316.  The court further noted that "[a]lthough [Exxon's] diversity jurisdiction argument was not a winner, the Court cannot say that it was unreasonable for [Exxon] to press that argument."  *Id*.  Hence, the district court awarded fees only for five of the six bases asserted by Exxon for removal and only for work performed and costs incurred on those five bases after our ruling in *Connecticut*.

On June 7, 2024, Exxon appealed the fee award. To avoid further litigation over the amount of fees and costs, the City and Exxon stipulated that in the event the fee award was affirmed on appeal, Exxon would pay the City $68,262.46. The district court "so ordered" the stipulation on July 10, 2024.

## DISCUSSION

We review a decision to award attorneys' fees and costs under 28 U.S.C. § 1447(c) for abuse of discretion. *See Calabro v. Aniqua Live Poultry Corp.*, 650 F.3d 163, 166 (2d Cir. 2011). "A district court has abused its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or rendered a decision that cannot be located within the range of permissible decisions." *Id.* (citation omitted).

### A.    *Applicable Law*

Section 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). In *Martin v. Franklin Capital Corp.*, 546 U.S. 132 (2005), the Supreme Court provided guidance as to the award of fees and costs:

- 21 -

Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied. In applying this rule, *district courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case.*

546 U.S. at 141 (emphasis added; citations modified). Thus, as the Court made clear, a district court retains discretion to award fees in "unusual circumstances," even where an objectively reasonable basis for removal existed.

In exercising its discretion in awarding fees, the district court's "reasons for departing from the general rule should be 'faithful to the purposes' of awarding fees under § 1447(c)." *Id.* (citations omitted). The Court further explained:

Congress thought fee shifting appropriate in some cases. The process of removing a case to federal court and then having it remanded back to state court delays resolution of the case, imposes additional costs on both parties, and wastes judicial resources. Assessing costs and fees on remand reduces the attractiveness of removal as a method for delaying litigation and imposing costs on the plaintiff. The appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when statutory criteria are satisfied.

- 22 -

*Id.* at 140.

**B.    *Application***

On appeal, Exxon does not challenge the district court's order to remand the case; it challenges only the district court's award of fees and costs.  It argues that the district court abused its discretion in awarding fees and costs because the district court made two legal errors:  first, it awarded fees and costs despite finding *one* of Exxon's six grounds for removal to be objectively reasonable; and, second, the district court assessed the reasonableness of the grounds for removal based on the law and circumstances at the time of its renewed motion to remand rather than at the time the case was initially removed.  We address both arguments in turn, and then consider the reasonableness of the district court's award of fees and costs.

**1.    *Grounds for Removal***

As noted above, in *Martin* the Supreme Court held that "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal" and "[c]onversely, when an objectively reasonable basis exists, fees should be denied."  546 U.S. at 141.  Exxon argues that because the district court

found that the diversity jurisdiction argument was not "unreasonable," 733 F.

Supp. 3d at 316 ("the Court cannot say that it was unreasonable for [Exxon] to

press [the diversity] argument"), it was error for the district court to award fees

because there was a reasonable ground for removal.

We are not persuaded; Exxon's argument ignores the words

"[a]bsent unusual circumstances."  *Martin*, 546 U.S. at 141.  The Court made clear

in *Martin* that, in "unusual circumstances," fees could be assessed under § 1447(c)

*even if* there was a reasonable basis for removal.[4]  *Id.* The question thus becomes

whether this case presented "unusual circumstances" and, if so, whether the

district court abused its discretion in awarding fees in those circumstances.

This case, in our view, clearly presented unusual circumstances.

Exxon's renewed opposition to remand in this case was not made in a vacuum,

but after efforts to remove similar state cases to federal court had been rejected

---

[4]      While arguing that the unusual circumstances exception does not apply in this case, Exxon acknowledges in its brief on appeal that "'district courts retain discretion to consider whether unusual circumstances warrant a departure from the [general] rule in a given case,' *Martin*, 546 U.S. at 141."  Appellants' Br. at 20.

all around the country.  On November 11, 2023, when Exxon renewed its

opposition to the City's motion to remand below, its arguments opposing

remand had been rejected by eight circuits -- the First, Third, Fourth, Fifth,

Eighth, Ninth, and Tenth as well as by this Court in *Connecticut* -- and by at least

eleven district courts (including the district court in *Connecticut*).[5]  As the district

court here put it:

> Although Defendants may have removed this case in good faith in
> 2021, their opposition to the City's Renewed Motion to Remand,
> which was briefed in October 2023, made multiple arguments that
> had previously been made to and universally rejected by federal
> courts across the country.  Defendants conceded that *Connecticut*
> controlled one of its grounds for removal, . . . but conceded nothing
> else, despite the string of cases in district and circuit courts that have
> rejected the very arguments they were pursuing.  Whatever may
> have been the state of play in 2021, this can no longer be considered
> a good faith litigation strategy.

733 F. Supp. 3d at 315.

Exxon contends that here the district court did not invoke the

unusual circumstances exception, and it is true that the district court did not use

those words in its decision.  *See id*. at 314-16.  As a general matter, however, we

---

[5]     *See* footnote 1 *supra*.  In the circuit cases cited in footnote 1, the circuit courts were
affirming district court decisions granting motions to remand.

- 25 -

can affirm on any ground supported by the record.  *See Mallet v. New York State Dep't of Corr.*, 126 F.4th 125, 137 n.9 (2d Cir. 2025) ("[W]e 'may affirm on any basis for which there is sufficient support in the record, including grounds not relied on by the district court.'") (citations omitted).  The record here supports the conclusion that this case presented unusual circumstances.  Indeed, even defense counsel acknowledged during oral argument that this was an "unusual" case.

Moreover, the record makes clear that the district court believed this case presented "unusual circumstances," even if it did not use those precise words.  The language of the decision -- including the language quoted above -- bears this out.  The district court also characterized some of defendants' arguments as: "the silliest of all its arguments" (*id*. at 308); "ridiculous" (*id*. at 308); "[s]econd in absurdity" (*id*. at 312); and "objectively absurd" (*id*. at 316).

Accordingly, we hold that this case presented unusual circumstances such that the district court had the discretion to award fees and costs pursuant to § 1447(c) even though, as the district court found, Exxon had one objectively reasonable – though meritless – basis for removing the case in 2021 and for renewing its opposition to remand in November 2023.

2. *Timing*

Exxon argues that the district court erred in evaluating the validity of its jurisdictional arguments based on the law when it renewed its opposition to remand in November 2023 (after our decision in *Connecticut*), rather than when it initially removed the case 2021. Exxon contends that because all of the removal arguments were "reasonable" at the time of the initial removal, the district court erred in awarding fees based on the state of the law in 2023. We disagree.

First, we consider the unusual timeline of the proceedings in the case -- the case was stayed for two years after it was removed pending our decision in *Connecticut*. During that time, many of the precise arguments asserted in this case -- by the same oil companies represented by the same lawyers -- had been raised and were rejected in many similar cases in other parts of the country. After we ruled in *Connecticut*, the parties had the benefit not only of our decision but of decisions of seven other circuits and many other district courts. Hence, the state of the law had indeed changed from 2021 to 2023, and Exxon's jurisdictional arguments had been, as the district court put it, "roundly rejected." 733 F. Supp. 3d at 315.

- 27 -

Second, the case was stayed in the district court precisely to give the parties the benefit of this Court's decision in *Connecticut*. Exxon had the ability in 2023 to evaluate this Court's ruling in *Connecticut* -- as well as all the other decisions from around the country -- to decide whether to persist in its opposition to remand. At that point, it was largely irrelevant whether Exxon had reasonable grounds for removing the case in 2021; the question was whether, given the undeniable change in the legal landscape, Exxon had reasonable grounds for prolonging litigation by continuing to oppose remand.

Third, neither § 1447(c) nor *Martin* places limits on the timing of a district court's fees analysis. Rather, the Court in *Martin* made clear that a district court has discretion to award fees and costs "when such an award is just." 546 U.S. at 138. The only limitation on the exercise of a court's discretion, the Court explained, is that the court's "reasons for departing from the general rule should be 'faithful to the purposes' of awarding fees under § 1447(c)." *Id*. at 141 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)). A rule limiting the temporal scope of the court's analysis would unduly restrict its discretion to award fees "when such an award is just." That outcome cannot be what the Supreme Court intended when it held in *Martin* that "district courts retain discretion to consider

- 28 -

whether unusual circumstances warrant a departure from the [general] rule in a given case." 546 U.S. at 141. Such a result would undermine § 1447(c)'s purpose to discourage removals designed to delay litigation and inflict costs. *Id.* at 140.[6]

Consequently, we conclude that the district court did not err in evaluating the soundness of Exxon's jurisdictional arguments in 2023, when Exxon renewed its jurisdictional arguments for removal, rather than when the case was first removed in 2021.

**3.** *The Reasonableness of the Award*

Finally, we consider the reasonableness of the district court's award of fees and costs in light of the considerations discussed above.

---

[6] Exxon argues that the Supreme Court's citation in *Martin* to *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 293 (5th Cir. 2000), *see* 546 U.S. at 141, supports its argument that the district court was strictly limited to considering the legal landscape at time of the initial removal in 2021. **[Blue at 21].** In *Valdes*, the Fifth Circuit stated: "We evaluate the objective merits of removal at the time of removal, irrespective of the fact that it might ultimately be determined that removal was improper." 199 F.3d at 294. Exxon reads too much into the Supreme Court's citation to *Valdes*. *Martin* does not include the quoted language or otherwise refer to it. Rather, *Martin* does not discuss timing at all and cites *Valdes* only for the general rule as to when fees should be granted or denied. *See* 546 U.S. at 141. Furthermore, *Valdes* does not address the situation where, as here, a party continues to press legal arguments that many courts have already rejected.

While it might have been problematic if the district court had awarded the City fees and costs from the point of removal in 2021, it awarded fees and costs only "in connection with arguments that it was not reasonable for Defendants to press when the City renewed its motion to remand." *Id.* at 316. The district court exercised its discretion to award fees and costs in a measured way -- that is, only with respect to fees associated with the objectively unreasonable grounds for removal and only for work required after the legal landscape had shifted significantly. The district court's approach was certainly "faithful to the purposes" of fee awards under § 1447(c), as it balanced the right of Exxon to remove the case to federal court against the costs of delay and prolonged litigation. *See Martin*, 546 U.S. at 140-41.

The district court did not find that Exxon had acted in bad faith in renewing its opposition to remand, nor do we reach that conclusion.[7] The law does not require that a removal be made in bad faith to warrant an award of fees under § 1447(c). *See Morgan Guar. Trust Co. of New York v. Republic of Palau*, 971

---

[7] *Cf.* 733 F. Supp. 3d at 315 ("Whatever may have been the state of play in 2021, this can no longer be considered a good faith litigation strategy.").

- 30 -

F.2d 917, 923 (2d Cir. 1992) ("[T]he statute as amended makes no reference at all to the state of mind or intent of the party removing the action, instead focusing strictly on the mere absence of subject matter jurisdiction.").[8]  Nonetheless, although Exxon may have had one objectively reasonable ground for renewing its opposition to remand, it continued to press many other arguments that had been "roundly rejected" either by this Court in *Connecticut* or by many other courts around the country -- eight circuit courts and at least eleven district courts.  While perhaps not asserted in bad faith, many of the arguments were plainly meritless, and some, as the district court concluded here, "objectively absurd."  Yet, the parties were required to litigate these claims, the district court was required to decide them, and the litigation was multiplied and delayed.

---

[8]      Nor does § 1447(c) require a finding of frivolousness for an award of fees and costs.  While the Supreme Court has noted that "a district court may order a defendant to pay the plaintiff's costs and expenses (including attorney's fees) if it frivolously removes a case from state court," *BP P.L.C. v. Mayor & City Council of Baltimore*, 141 S. Ct. 1532, 1542 (2021), the Court did not hold that frivolousness was *a requirement.*  As we held in *Morgan Guaranty*, "[t]he statute as a whole, particularly the reference that an order remanding the case *'may* require payment' of costs and fees, . . . affords a great deal of discretion and flexibility to the district courts in fashioning awards of costs and fees."  971 F.2d at 924; *see also Martin*, 546 U.S. at 140-41.

- 31 -

In these circumstances, we conclude that the district court did not abuse its discretion in awarding fees and costs to the extent that it did, that is, for work done after we issued our decision in *Connecticut* and only with respect to five of the six grounds asserted by Exxon.  Indeed, the final award is only $68,262.46 -- a nominal sum in the context of the overall, nation-wide litigation.[9]

### CONCLUSION

For the foregoing reasons, the order of the district court is AFFIRMED.

_____

[9] In Part IV, the dissent writes that fees and costs should not have been assessed against Exxon because "the underlying complaint can be characterized as frivolous."  Dissent at 14.  Of course, the fact that an underlying claim may be frivolous does not justify questionable or oppressive conduct on the other side.  Even assuming the City's claims are meritless, two wrongs do not make a right.

<u>City of New York v. Exxon Mobil Corp.</u>, No. 24-1568

DENNIS JACOBS, *Circuit Judge*, dissenting:

At issue is a narrow statutory remedy:  a district court's authority under 28 U.S.C. § 1447(c) to "order a defendant to pay [costs and fees] if it frivolously removes a case from state court."  *BP P.L.C. v. Mayor & City Council of Baltimore*, 593 U.S. 230, 141 S. Ct. 1532, 1542 (2021).  It follows that otherwise no costs or fees may be imposed.  I respectfully dissent.

New York City (the "City") sued defendants—oil companies and their trade association—under the City's consumer protection statutes, on the theory that the defendants had misled consumers about how oil products contribute to global climate change.  The defendants removed to federal court in 2021, citing seven bases for federal removal jurisdiction.  In 2023, after a stay of proceedings to await a precedent from this Court, the City filed a renewed motion to remand based on lack of removal jurisdiction.  The defendants opposed on six of the bases they had cited in their notice of removal (the seventh was abandoned in light of intervening case law).  The district court ruled that one basis was objectively reasonable, and the rest not.

The City's motion was granted and the case was remanded to state court.  Additionally, the City was awarded certain costs and fees under 28 U.S.C. §

1

1447(c), which allows a remanding district court to award "just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Barring "unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). The district court grounded its award here on its determination that of the six bases that the defendants invoked in their 2023 brief opposing remand, only one was "objectively reasonable."

The defendants appeal only the award of costs and fees. They argue that the court abused its discretion by committing two legal errors: (1) awarding costs and fees despite finding that there was an objectively reasonable ground for removal; and (2) assessing objective reasonableness as of the defendants' briefing on the renewed remand motion (2023, after the law had further crystalized), rather than as of 2021, the time of removal.

The combination of these two errors requires reversal or vacatur. Under *Martin*, a finding that the defendant had at least one reasonable ground for removal defeats a motion for Section 1447(c) costs and fees absent "unusual circumstances." 546 U.S. at 141. The district court here concluded that the

defendants had an objectively reasonable ground to seek removal based on

diversity jurisdiction.  The district court therefore lacked discretion to award

Section 1447(c) costs and fees without a determination of "unusual

circumstances."  The City urged the district court to invoke this exception to the

otherwise bright-line *Martin* rule; but the district court rested its decision entirely

on the rule, not the exception.  That it could not do.

In another case, it might be possible for us to affirm on the alternative

ground that "unusual circumstances" were present under *Martin*, even if the

district court did not invoke the exception.  But that approach is not available

here.  There was no circumstance other than the surplus of claims, which is by no

means unusual.  Moreover, the district court's principal error is compounded by

use of the wrong time frame in assessing "objective reasonableness."  The district

court asked whether the defendants' grounds for removal were reasonable as of

the last time they advocated those grounds to the court—in the 2023 briefing, not

as of the time of removal in 2021.  But the Supreme Court teaches that Section

1447(c) awards punish only the act of "frivolously remov[ing]":  bringing a state

court action to federal court when it clearly does not belong there.  *BP*, 141 S. Ct.

at 1542.  "Frivolous *arguments*" to avoid a later remand, like those "in virtually

3

any context," are instead the province of "sanction[s]" under Fed. R. Civ. P. 11, *id*. (emphasis added), or 28 U.S.C. § 1927, for vexatious multiplication of proceedings, or the court's inherent authority. Each has attendant procedural protections distinct from Section 1447(c).

The use of the wrong time period matters because the district court did not make a finding necessary to permit our review of its exercise of discretion: whether defendants' removal was frivolous *at the time of removal*. Without that determination, the district court lacked discretion to find that removal here was "frivolous," *see BP*, 141 S. Ct. at 1542—whether based on the "unusual circumstances" of this case or not. The majority opinion makes a belated finding to that effect on appeal; but that is displacement of the district court's power of discretion.

True, the district court plainly decided that the defendants' conduct here was not "a good faith litigation strategy." *City of New York v. Exxon Mobil Corp.*, 733 F. Supp. 3d 296, 315 (S.D.N.Y. 2024). Such conduct may have been sanctionable. But that says nothing about whether fee shifting was authorized under Section 1447(c).

I.

In 2021, New York City sued the defendants in New York state court under the City's consumer protection law. *Id.* at 303. The City alleges that the defendants "systematically and intentionally misled consumers . . . about the central role their products play in causing the climate crisis." *Id.*

The defendants removed to federal court, asserting seven grounds for removal: (1) federal question jurisdiction based on the application of federal common law; (2) the federal officer removal statute; (3) the Outer Continental Shelf Lands Acts (OCSLA); (4) federal enclave jurisdiction; (5) diversity jurisdiction, based on the alleged fraudulent joinder of non-diverse defendant ExxonMobil Oil Corporation; (6) the Class Action Fairness Act; and (7) the substantial federal question doctrine. *See id.* at 304 & n.2.

After the City's motion was briefed, the district court entered a stay pending the Second Circuit's decision in *Connecticut v. Exxon Mobil*, 83 F.4th 122 (2d Cir. 2023). *Connecticut* held that an analogous consumer deception claim against Exxon was not removable under (1) federal question jurisdiction premised on federal common law; (2) the federal officer removal statute; or (3) OCSLA. 83 F.4th 122 at 129. After *Connecticut*, the district court lifted its stay,

5

denied the City's motion for remand without prejudice, and granted the City leave to file a renewed motion for remand that took account of *Connecticut*.

The City's renewed motion to remand requested Section 1447(c) costs and fees. *Exxon Mobil*, 733 F. Supp. 3d at 304, 314. The defendants again opposed. *Id.* The defendants renewed all but one of their arguments for federal jurisdiction. *Id.* at 304 & n.2. They relinquished their argument premised on OCSLA, which they conceded could not withstand *Connecticut*. *See id.*

The district court granted the motion for remand, ruling that all six of the defendants' remaining theories of federal jurisdiction failed. *See id.* at 303-04. This appeal arises because the district court also granted "the City's request for costs and fees . . . as to five of the six bases for removal at issue." *Id.* at 316. Per the district court, these five were "not reasonable for Defendants to press when the City renewed its motion for remand." *Id.* Costs and fees were denied as to the sixth basis for removal: diversity jurisdiction, arguing fraudulent joinder of a peripheral New York entity. *See id.* While that argument "was not a winner," the district court "[could not] say that it was unreasonable for Defendants to press" it. *Id.*

II.

We review a district court's award of attorney's fees and costs under

section 1447(c) for "abuse of discretion." *Calabro v. Aniqa Halal Live Poultry Corp.*,

650 F.3d 163, 166 (2d Cir. 2011). "A district court has abused its discretion if it

based its ruling on an erroneous view of the law or on a clearly erroneous

assessment of the evidence, or rendered a decision that cannot be located within

the range of permissible decisions." *Id.* (citation omitted).

"[A]bsent unusual circumstances, attorney's fees should not be awarded

when the removing party has an objectively reasonable basis for removal."

*Martin*, 546 U.S. at 136. To be clear, "[a]bsent unusual circumstances, courts may

award attorney's fees under § 1447(c) *only* where the removing party *lacked* an

objectively reasonable basis for seeking removal." *Id.* at 141 (emphasis added).

"Conversely, when an objectively reasonable basis exists, fees should be denied."

*Calabro*, 650 F.3d at 166 (quoting *Martin*, 546 U.S. at 141).

The district court, however, concluded that it has discretion to grant fees

under Section 1447(c) notwithstanding that the removing party had "an

objectively reasonable basis for removal," because five objectively unreasonable

7

(alternative) grounds were pressed in opposition to remand.  *Exxon Mobil*, 733 F.

Supp. at 314-16 (citation omitted).

That was error.  As the Seventh Circuit recognized in *Lott v. Pfizer, Inc.*,

"[t]he only question" in the primary *Martin* inquiry is whether at least a single

basis for removal was "objectively reasonable."  492 F.3d 789, 792 (7th Cir. 2007).

*Lott* reversed an award of Section 1447(c) costs and fees because one of the two

bases cited for removal was "objectively reasonable."  *See id.*  And because one

basis was objectively reasonable, the Seventh Circuit held that it "need not

consider whether" the defendant's other basis for removal "was also reasonable."

*Id.* at 794.

Under *Martin*, a district court's discretion to award Section 1447(c) fees

against a defendant who had one or more objectively reasonable bases for

removal is constrained:  such an award is forbidden "[a]bsent unusual

circumstances."  *Martin*, 546 U.S. at 141.  Accordingly, the award of fees here was

an abuse of discretion unless the court availed of the exception for "unusual

circumstances."

As noted, the district court did not purport to have invoked "unusual

circumstances," even though the City flagged the exception in its briefing below.

8

As *Martin* implies, a court that invokes "unusual circumstances" should explain itself. *Martin* requires that the "reasons for departing from the general rule" in "unusual circumstances" "should be faithful to the purposes of awarding fees under § 1447(c)." *Id.* (citation omitted). And *Martin* recites with approval the tenet that "when an issue is committed to judicial discretion, the judge's decision must be supported by a circumstance that has relevance to the issue at hand." *Martin*, 546 U.S. at 141 (quoting *Milwaukee v. Cement Div., Nat. Gypsum Co.*, 515 U.S. 189, 196 n.8 (1995)).

*Martin* has thus given guidance as to when and how the "unusual circumstances" exception may be invoked; but there is no sign in the district court opinion that the court intended to invoke its limited discretion under that exception, and exercise it. If, hypothetically, the district court did rely on "unusual circumstances" here, the failure to justify the "depart[ure] from the general rule" of *Martin* would frustrate meaningful appellate review. *Id.* That itself would be an abuse of discretion.

### III.

A second, independent ground for reversal is that the district court erroneously assessed the objective reasonableness of removal as of "when the

9

City renewed its motion for remand," *Exxon Mobil*, 733 F. Supp. at 316, and not as of the 2021 removal. The district court faulted the defendants for their briefing on the renewed remand motion "in October 2023," after their arguments "had previously been made to and universally rejected by federal courts across the country." *Id.* The district court reasoned that "[w]hatever may have been the state of play in 2021," that state of play did not bear upon the City's motion for Section 1447(c) fees.[1] *See id.* Crucially, however, the district court conceded that "defendants may have removed this case in good faith in 2021." *Id.* at 315.

The district court misapplied *Martin*. Absent unusual circumstances, *Martin* allows fee awards only where the removal was objectively unreasonable at the time of removal.[2] *Martin* holds that "when an objectively reasonable basis

---

[1] Because the defendants conceded in 2023 that their seventh asserted basis for removal (OCSLA jurisdiction) had been foreclosed by *Connecticut*, the district court did not consider the "reasonableness" of the OCSLA argument at all (whether in 2021 or thereafter). *See id.* at 314-16 (assessing the "objective reasonableness" of only the six bases reasserted in the defendants' opposition to the renewed remand motion).

[2] The City suggests that the defendants have waived objection to the district court's choice of 2023 over 2021 when assessing the objective reasonableness of the defendants' bases for removal. Even assuming that the City is correct, we may still decide the issue. "[I]t is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal." *Dean v. Blumenthal*, 577 F.3d 60, 67 n.6 (2d Cir. 2009) (citation omitted). However, "this rule is prudential, not jurisdictional, and we have discretion to consider waived

exists, fees should be denied."  546 U.S. at 141.  In support of that proposition, *Martin* cites *Valdes v. Wal–Mart Stores, Inc.*, 199 F.3d 290, 293 (5th Cir. 2000), which states at the page cited:  "We evaluate the objective merits of removal *at the time of removal*, irrespective of the fact that it might ultimately be determined that removal was improper."  199 F.3d at 293 (emphasis added); *see also Lott*, 492 F.3d at 792 (observing that *Martin* approved of *Valdes*, which "applied the objectively reasonable standard by examining the clarity of the law *at the time the notice of removal was filed*" (emphasis added)).

Martin's reliance on *Valdes* confirms what the rest of *Martin* indicates:  that the Section 1447(c) inquiry concerns *the removal itself*, not a party's *later opposition to remand*.  *Martin* holds that "courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis *for seeking removal*."  546 U.S. at 141 (emphasis added).  Likewise, *Martin* directs courts to look back in time to consider whether "the removing party lack*ed* an objectively reasonable basis."  *Id.* (emphasis added).  Every court of appeals to address the issue in a published opinion appears to have so concluded.  *See, e.g., Virgin*

---

arguments," especially where, as here, "the argument presents a question of law and there is no need for additional fact-finding."  *Id.* (cleaned up).

11

*Islands Hous. Auth. v. Coastal Gen. Const. Servs. Corp.*, 27 F.3d 911, 917 (3d Cir. 1994); *Ohio ex rel. Skaggs* v. *Brunner*, 629 F.3d 527, 533 (6th Cir. 2010); *Convent Corp. v. City of North Little Rock*, 784 F.3d 479, 483 (8th Cir. 2015); *Lussier* v. *Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1066 (9th Cir. 2008); *Martin* v. *Franklin Capital Corp.*, 393 F.3d 1143, 1148, 1151 (10th Cir. 2004); *Legg* v. *Wyeth*, 428 F.3d 1317, 1320 (11th Cir. 2005). And a panel of this Court has agreed in a summary order. *See Williams v. Int'l Gun-A-Rama*, 416 Fed. App'x 97, 99 (2d Cir. 2011) ("Objective reasonableness is evaluated based on the circumstances as of the time that the case was removed.").

The City urges that a different rule should apply here because the defendants were "given the opportunity to, in effect, re-do a notice of removal" when they were given a second opportunity to brief remand in 2023. However, a brief in opposition to a motion to remand does not remove a case; nor does a brief in opposition to *renewed* motion for remand.

True, defendants maintained some of the grounds for removal for years as courts nationwide rejected them. But parties often preserve arguments for consideration, reconsideration, or review, and the Supreme Court has warned against imposing sanctions for doing so. *See McKnight v. Gen. Motors Corp.*, 511

12

U.S. 659, 659-60 (1994) (per curiam).  Thus, "if the only basis for the order

imposing sanctions . . . was that [the] argument was foreclosed by Circuit

precedent, the order was not proper."  *Id.* at 660.  Defendants here were not

obliged to abandon an argument they wished to preserve.  In any event, the

district court never asked *at all* whether the five grounds that were "objectively

unreasonable" to assert in 2023 were "objectively unreasonable" at the time of

removal in 2021.  No matter how one reads the district court opinion, the court

"based its ruling on an erroneous view of the law" and thereby abused its

discretion.  *Calabro*, 650 F.3d at 166.

IV.

I would reverse.  At the least, we should vacate and remand, with the

following pertinent observations.

What is frivolous in this case is the claim, not its removal.  On remand, the

Supreme Court of New York County dismissed the underlying case on the

pleadings.  As Justice Patel explained:

> The City cannot have it both ways by, on one hand, asserting that
> consumers are aware of and commercially sensitive to the fact that
> fossil fuels cause climate change, and, on the other hand, that the
> same consumers are being duped by Defendants' failure to disclose
> that their fossil fuel products emit greenhouse gases that contribute
> to climate change.  In this respect, the City's allegation that

13

Defendants "conceal the central role of fossil fuels in causing climate change" is not cognizable where the City has otherwise conceded widespread public awareness of this information.

*City of New York v. Exxon Mobil Corp.*, 226 N.Y.S.3d 863 (N.Y. Sup. Ct. 2025).

Considering that summary dismissal was entered under the indulgent New York pleading standard, the underlying complaint can be characterized as frivolous. In any event, a party that uses a local consumer protection law to combat global climate change should not be compensated on the premise that the other side is filing frivolous papers.

\*     \*     \*

I respectfully dissent.

14